Gary Don COLGIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–01017–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 26, 2004.

Mark W. Stevens, The Law Office of Mark Stevens, Galveston, TX, for Appellant.

Joel Hunter Bennett, Assistant Criminal District Attorney, Michael J. Guarino, Criminal District Attorney–Galveston County, B. Warren Goodson, Jr., Assistant District Attorney, Galveston, TX, for Appellee.

Panel consists of Justices ALCALA, HANKS, and JANE BLAND.

## OPINION

JANE BLAND, Justice.

A jury convicted appellant Gary Don Colgin of aggravated sexual assault, found true an enhancement allegation of a previous conviction of sexual assault, and as-

sessed punishment at life imprisonment. On appeal, Colgin complains that the trial court erred in (1) refusing to suppress his written statement; (2) admitting a photo array; and (3) admitting two witness identification sheets based upon the photographic lineup. The trial court did not abuse its discretion in admitting this evidence, and we therefore affirm.

## Facts and Procedural History

In September 2001, Lieutenant Jackson of the LaMarque Police Department responded to a complaint of aggravated sexual assault at the Factory Outlet Mall. The suspect had fled the scene, so after conducting an investigation, Jackson returned to the police station. Later that day, Jackson reported the assault incident to Captain Zacherl of the LaMarque Fire Department. Zacherl informed Jackson that the fire department just had brought an individual matching the assailant's description to the Columbia Mainland Center Hospital. Jackson contacted Sergeant Macik, an officer assigned to the Criminal Investigation Division of the LaMarque Police Department, and informed him that a suspect in the aggravated sexual assault investigation was receiving treatment at the hospital.

Jackson and Zacherl immediately drove to the hospital, and Macik arrived shortly thereafter. Upon finding Colgin in the hospital emergency room and determining that he indeed matched the complainant's description, Jackson read Colgin his *Miranda* warnings.[1]

Colgin later confessed his crime to the police. In addition, the complainant selected Colgin as her assailant out of a photo array provided for her review by the police. The police procedures used in obtaining the confession and the photo identification form the basis of Colgin's complaints on appeal.

Jackson and Macik testified at the suppression hearing. Jackson testified that after he read Colgin his *Miranda* warnings, he asked Colgin whether he had been at the Factory Outlet Mall that day, to which Colgin responded, "I have nothing to say." Jackson left Colgin's hospital room, notified the dispatch officer that he had located a possible suspect in the sexual assault case, and waited for another officer to arrive. Macik testified that when he arrived at the hospital, Jackson informed him that he had read Colgin his *Miranda* warnings. Macik introduced himself to Colgin, and informed him that he was investigating an incident that occurred that day at the Factory Outlet Mall. Macik provided Colgin with a waiver of rights form and asked Colgin whether he could read and write. Colgin acknowledged that he could read and write, and Makic testified that he explained the waiver form as follows:

> I explained to him that after he read each of the numbered lines there [sic] to place his initials if he understood them; or if he had any questions, to ask me and I'd explain the questions to him. I also asked him to place his initials on the bottom of the Waiver of Rights paragraph, and if he understood those rights, that if he waived his rights and agreed to talk to us about the investigation, for him to sign it, date it and time it, [sic] which he did.[2]

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The form is entitled "Rights of a Person Being Questioned." It contains five numbered lines. The first four numbered lines contain the *Miranda* warnings, and the fifth numbered line provides as follows:

> IF YOU DECIDE TO ANSWER QUESTIONS NOW WITHOUT A LAWYER PRESENT, YOU WILL STILL HAVE THE

Makic testified that Colgin read the form. While reading it, Colgin never indicated that he could not see the words, or that he needed reading glasses. Macik also testified that Colgin did not appear to be delusional, and that Colgin freely and voluntarily signed the waiver. After Colgin executed the waiver, he and Macik discussed the events leading up to his arrival at the hospital. Macik then asked Colgin whether he was involved in a sexual assault at the Factory Outlet Mall. Colgin responded, "No Comment."

Macik left the hospital, but later returned to continue the investigation, and to obtain Colgin's photograph for use in a photographic line-up. Macik testified that Colgin spontaneously stated, "I don't want the girl to hurt anymore. I will give you a statement." A physician from the psychiatric unit evaluated Colgin and released him from the hospital. Officer Mallette, the police officer guarding Colgin while he received treatment at the hospital, transported Colgin to the police station.

Upon arrival, Colgin received a second waiver form, identical to the first. Macik testified that Colgin "read over" and executed the second waiver, and that Colgin never indicated that he could not read or did not understand the second waiver.

Colgin then made an oral statement, which Macik typed "basically word for word—not word for word what he said, but in the contents of what he was telling me." Before signing the statement, Colgin informed Macik that he did not have his reading glasses. Macik testified as follows:

"At that point, I read him [sic] word for word the written statement that I had obtained from him. And at the conclusion of taking that statement, [Colgin] signed it, and it was witnessed by myself and then Lieutenant Willie Bird."

Macik testified that Colgin told him that he understood everything that was read to him, and Colgin declined the opportunity to add or delete anything.

Macik also testified that he never denied Colgin a restroom break or food, did not threaten him, and that Colgin never indicated while giving his statement that he desired to stop, or that he wished to speak with an attorney. Colgin never requested an attorney, did not seem incoherent, and, according to Macik, appeared to be "voluntarily participating in the process of giving a statement."

Colgin's testimony at the motion to suppress hearing conflicted with the State's evidence. Colgin acknowledged that Jackson immediately read his rights to him and asked whether he desired to make a statement. Colgin testified, however, that he then requested an attorney, whereupon Jackson left the room. Colgin testified that Macik later entered, asked Colgin his name, and started questioning him. Colgin testified regarding his exchange with Macik as follows: "He read me my rights, too, and asked me if I had read my rights, and I said 'Yes.' And I told him I'd like to speak to a lawyer."

Colgin testified that he continued to ask for an attorney, but Macik persisted in his interrogation. Colgin also testified that he

RIGHT TO STOP ANSWERING AT ANY TIME; YOU ALSO HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME UNTIL YOU TALK WITH A LAWYER.
The paragraph entitled Waiver of Rights provides:
I HAVE READ THIS STATEMENT OF MY RIGHTS AND I UNDERSTAND WHAT MY

RIGHTS ARE. I AM WILLING TO MAKE A STATEMENT AND ANSWER QUESTIONS. I DO NOT WANT A LAWYER. I UNDERSTAND AND KNOW WHAT I AM DOING. NO PROMISES OR THREATS HAVE BEEN MADE TO ME AND NO PRESSURE OR COERCION OF ANY KIND HAS BEEN USED AGAINST ME.

told Macik that he was tired, and that he wanted to go to sleep, but Macik ignored his requests. Instead, Colgin testified that Macik said that the police needed to get a statement before taking him to the Galveston County Jail, because Colgin had indicated his desire to commit suicide, and the LaMarque Police Department would be unable to keep him at their facility under a suicide watch. Colgin testified that he felt very intimidated, and he eventually gave the statement, transcribed by Macik, but that, without reading glasses, he was unable to read it.

On cross-examination, Colgin admitted that he initialed and signed both waiver forms. Colgin testified that normally he does not sign a document until after reading it, but in this instance, he signed the waiver forms and the statement containing his confession because he was not in a "normal frame of mind."

### The Motion to Suppress

■ In his first and second issues, Colgin contends that his confession was the result of coercion. Relying on *Farr v. State*, 519 S.W.2d 876, 878 (Tex.Crim.App. 1975), he contends that three instances of "coercive conduct" not "satisfactorily explained" by the State render Colgin's confession inadmissible as a matter of law.

### 1. Standard of Review

In reviewing the trial court's ruling on a motion to suppress evidence, we defer to the trial court's determination of facts, particularly when the trial court's findings turn on an evaluation of the credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We apply the same deference in reviewing the trial court's rulings on mixed questions of law and fact if they turn upon a similar credibility evaluation. *Id.* If a mixed question of law and fact does not turn on a witness's credibility and demeanor, however, we review the trial court's determination *de novo*. *Id.*

In this case, we review the record to determine whether it supports the trial court's finding that Colgin made a free and voluntary statement to police. *Wyatt v. State*, 23 S.W.3d 18, 23–24 (Tex.Crim.App. 2000). *See also* TEX.CODE CRIM. PROC. ANN. art. 38.21 (Vernon 1979) (statement of accused may be used against him if freely and voluntarily made without compulsion or persuasion).

### 2. The Suppression Hearing

Colgin identifies three instances of police conduct which form the basis of his complaint that his confession was not voluntary, namely that the police: (1) allowed the hospital to release Colgin when he should have been kept for observation under a suicide watch; (2) failed to discontinue the interview despite his statement that he was tired and wanted to rest; and (3) failed to allow Colgin to find and use his reading glasses before he signed the statement.

■ We reject Colgin's contention that his confession was coerced, and conclude the trial court's findings of fact and conclusions of law are supported by the record. The motion to suppress presented the trial court with two versions of the events surrounding Colgin's statement, and required the trial court to evaluate the credibility of the witnesses at the hearing. *See Guzman*, 955 S.W.2d at 89. The trial court is the sole judge of credibility of the witnesses and the weight to be afforded their testimony. *See id.* As evidenced by its findings of fact, the trial court believed Jackson and Macik. There is evidence in the record to support this determination and we defer to it. *See e.g. Wyatt*, 23 S.W.3d at 24–25 (trial court did not err in holding confession made freely and volun-

tarily, despite fact that defendant testified that officers intimidated him into signing statements and ignored his requests for an attorney, and that he did not have his glasses with him to read and correct his statements). *See also Pete v. State*, 501 S.W.2d 683, 686 (Tex.Crim.App.1973) (fact that appellant was illiterate did not render confession inadmissible, as record supported fact that officers read confession to defendant before he signed it).

Colgin further contends that the State failed to "satisfactorily explain" four allegations of coercive conduct, rendering his confession inadmissible:

1. The police officers were aware that Colgin was suicidal;

2. During his interrogation, Colgin informed the interrogating officers that he was tired and wanted to rest;

3. The interrogating officer informed him that he must complete the interrogation before he could be taken to the Galveston County Jail; and

4. The police did not give Colgin his reading glasses before he signed the statement containing his confession.

*See Farr*, 519 S.W.2d at 878–79. Colgin failed to provide any citation to the record showing that he raised this complaint to the trial court. Our review of the record, however, indicates that Colgin contended at the hearing that there were "better ways" of handling the statement than "the way this was handled." The State's position in the trial court, however, was not that the alleged coercive conduct could be "satisfactorily explained." Rather, with the exception of a request for reading glasses, Jackson and Macik denied that Colgin's version ever took place. In *Farr*, the Court of Criminal Appeals noted that the police officers that Farr contended coerced him into confessing were not called to testify, and "[t]heir failure to be called as witnesses left appellant's testimony as to coercion and threats at the time of the arrest completely uncontroverted." *Farr*, 519 S.W.2d at 878. In this case, the officers against whom Colgin lodged misconduct allegations testified regarding the events surrounding Colgin's confession at the suppression hearing. Colgin's reliance on *Farr v. State* is therefore misplaced.

We overrule Colgin's first and second issues.

## Witness Identification

In his third and fourth issues, Colgin contends the trial court erred in admitting an out-of-court photo lineup because it impermissibly suggested Colgin's identity and tainted a subsequent in-court identification. Colgin also contends that the trial court erred in admitting witness identification sheets, completed by witnesses on the date of the offense, because they were the product of the impermissibly suggestive identification procedure.

### 1. Standard of Review

We defer to a trial court's determination of historical facts supported by the record when the trial court finds facts based upon an evaluation of the credibility and demeanor of the witnesses. *Loserth v. State*, 963 S.W.2d 770, 772 (Tex.Crim.App. 1998). We similarly defer to the trial court's rulings on mixed questions of law and fact when they turn on the credibility of witnesses. *Id.* We review *de novo*, however, mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Id.* at 772–73. Here, the admission of the photo array does not turn on a credibility evaluation, and therefore we review it *de novo*.

### 2. The Identification Procedure

In-court identifications are inadmissable when tainted by an unduly

suggestive pretrial identification. *See Loserth*, 963 S.W.2d at 771–72. To determine whether a trial court correctly admitted an in-court identification, we employ a two-step analysis, and determine (1) whether the pretrial identification was impermissibly suggestive, and if so, (2) whether the suggestive pretrial identification gave rise to a substantial likelihood of irreparable misidentification at trial. *Loserth v. State*, 985 S.W.2d 536, 543–44 (Tex.App.-San Antonio 1999, pet. ref'd). In order for an in-court identification to be inadmissible, Colgin must demonstrate the existence of both elements by clear and convincing evidence. *Id.*

■ Neither due process nor common sense requires that the individuals in a lineup exhibit features exactly matching the accused. *Turner v. State*, 600 S.W.2d 927, 933 (Tex.Crim.App.1980). Rather, a photo array must contain individuals who fit a rough description of the suspect. *Wilson v. State*, 15 S.W.3d 544, 553 (Tex. App.-Dallas 1999, pet. ref'd). Here, Colgin contends that the photo array was impermissibly suggestive because it did not exactly replicate the condition of his eye, and the other individuals depicted in the array "were of distinctly different body types."

Macik, who created the photographic array, testified that he carefully selected the other men in it, looking specifically for Anglo–American men dressed in civilian clothes, close to the same size and build as Colgin, and who exhibited eye characteristics similar to Colgin. Macik testified that it took him longer than usual to construct the photo array, because he searched for photographs of men who had a "bad eye or something that would stand out in his eye to match up [to] the description that was provided by the victim." Macik found four photographs of individuals exhibiting a similar condition.

The photographic array is part of the record on appeal. It consists of six white males who are dressed in civilian clothes, and exhibit similar facial features. There are no gross disparities in age among the six men, all have receding hairlines, and although three of the men depicted in the photo array are heavier than Colgin, two others in addition to Colgin have the same "gaunt" appearance. Furthermore, Colgin does not dispute Macik's testimony that the four photographs he located depict men with a "bad eye or something that would stand out in his eye to match up the description that was provided by the victim."

The individuals depicted in the photo array fit the rough description of Colgin. We hold that the photo array was not impermissibly suggestive, and did not constitute an unfair lineup. *Wilson v. State*, 15 S.W.3d 544, 553 (Tex.App.-Dallas 1999, pet. ref'd). Because we conclude that the pretrial identification procedures were not impermissibly suggestive, we need not address whether those procedures created a substantial likelihood of misidentification. *See Webb v. State*, 760 S.W.2d 263, 269 (Tex.Crim.App.1988).[3] Finally, because Colgin predicated his objection to the admission of the witness identification sheets upon his contention that the identification procedure was faulty, Colgin's contention is, similarly, without merit.

We overrule Colgin's third and fourth issues.

---

**3.** Moreover, Colgin has waived this argument. The State presented identification testimony from both the complainant and a witness without objection, before Colgin raised an objection to the lineup. Thus, the jury had this evidence without objection and Colgin's later objection presents nothing for review. *Etheridge v. State*, 903 S.W.2d 1, 14 (Tex. Crim.App.1994).

## Conclusion

The trial court's ruling on Colgin's motion to suppress his written statement rests upon credibility determinations, and evidence in the record supports the trial court's findings. The photo array was not impermissibly suggestive and was cumulative of other identification evidence admitted without objection. We therefore affirm the trial court's judgment.