Opinion issued February 10, 2005








     







In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01351-CR




MAURICK JERRE O’NEAL, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 963213




MEMORANDUM OPINION

          A jury found appellant, Maurick Jerre O’Neal, guilty of the offense of
aggravated robbery. The trial court, after having found true the enhancement
paragraph of a prior felony conviction, assessed punishment at thirty-eight years’
confinement and a $10,000 fine. In this appeal, O’Neal contends that the trial court
erred in refusing to exclude witness identification testimony because the
identification was the result of an impermissibly-suggestive pretrial procedure. We
affirm the judgment of the trial court.
Background
          On May 28, 2003, at approximately 11:45 a.m., O’Neal, along with two other
men, entered the home of Thomas Douglas, his wife Letrina Douglas, and their
daughter, Kennetta Thomas. Thomas and Letrina were in their bedroom, with the
door closed, when they heard a loud noise. Kennetta, also in her bedroom, heard
beating and kicking on the door, and glass cracking on the window beside the door.
Kennettta walked outside her bedroom to the hallway and saw two men. The men
demanded that Kennetta give them money, told her to “shut up,” and demanded that
she turn off the alarm. Kennetta walked about fifteen to twenty feet to the front of the
home to turn off the alarm and she saw a third man possessing a handgun. Kennetta
observed that the man was wearing a red or orange shirt.
          Thomas testified that, from his bedroom, he heard a man yell “turn off the
alarm or we’re going to kill you.” Thomas then grabbed his gun and told Letrina to
leave their home though the patio door and seek help. After Letrina exited their
home, he fired a warning shot into the ceiling and yelled for the intruders to get out
of his home. Then, Thomas opened his bedroom door and stepped into the hallway
where he saw two armed men. Upon seeing Thomas, they ran. Thomas chased the
men outside and down the street. 
          During Thomas’s pursuit of the intruders, a man across the street began firing
at him. Thomas fired back five times, and the gunman fired back twice before fleeing
the scene. Thomas returned to his home and waited around thirty minutes for the
police to arrive. The police informed Thomas and Kennetta that they had
apprehended one of the men and wanted Thomas to identify him. 
          Later that day, Thomas went to the police station and viewed a photographic
array. Thomas was unable to identify O’Neal. During the trial, however, Thomas
identified O’Neal as the gunman on the street who had fired shots at him. Kennetta
also went to the police station and viewed a photo array of six individuals. Both at
the police station and during trial, she identified O’Neal as one of the men who broke
into her home. 
          O’Neal moved to suppress Kennetta’s identification testimony, but did not
similarly move to suppress Thomas’s testimony. The trial court held a hearing on the
admissibility Kennetta’s testimony identifying O’Neal as one of the intruders. The
trial court denied the motion, ruling that the photospread was not impermissibly
suggestive and that its use would not preclude any witness from testifying regarding
her identification of O’Neal. 
Witness Identification
O’Neal contends that the pretrial photo array was unnecessarily suggestive, and
thus in-court identification by witnesses Kennetta Thomas and Thomas Douglas
should have been suppressed. O’Neal failed to properly preserve his complaint
regarding Thomas’s in-court identification for appeal. In order to preserve a
complaint, one must timely, specifically object and obtain a ruling from the trial
court. See Tex. R. App. P. 33.1. O’Neal did not object to Thomas’s in-court
identification during the trial or move to suppress the identification. We therefore
consider only Kennetta’s testimony in this appeal. 
Standard of Review
We defer to a trial court’s determination of historical facts supported by the
record when the trial court finds facts based upon evaluation of the credibility and
demeanor of the witnesses. Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App.
1998). We similarly defer to the trial court’s rulings on mixed questions of law and
fact when they turn on the credibility of witnesses. Id. We review de novo, however,
mixed questions of law and fact that do not turn on an evaluation of credibility and
demeanor. Id. at 772-73. Here, the admission of the witness identification testimony
does not turn on a credibility evaluation, and therefore we review it de novo. 
The Identification Procedure
In-court identifications are inadmissible when tainted by an unduly suggestive
pretrial identification. See Loserth, 963 S.W.2d at 771-72; Colgin v. State, 132
S.W.3d 526, 531-32 (Tex. App.—Houston [1st Dist.] 2004, no pet.). To determine
whether a trial court correctly admitted an in-court identification, we use a two-step
analysis, and determine (1) whether the pretrial identification was impermissibly
suggestive, and if so, (2) whether the suggestive pretrial identification gave rise to a
substantial likelihood of misidentification at trial. Colgin, 132 S.W.3d at 532. In
order for an in-court identification to be inadmissible, a defendant must demonstrate
the existence of both elements by clear and convincing evidence. Id. If a court finds
that a pretrial identification procedure was impermissibly suggestive, it then must
consider the factors enumerated in Neil v. Biggers to determine whether the
suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification. 409 U.S. 188, 199-200, 93 S. Ct. 375, 382 (1972).
Neither due process nor common sense requires that the individuals in a lineup
exhibit features exactly matching the accused. Turner v. State, 600 S.W.2d 927, 933
(Tex. Crim. App. 1980); Colgin, 132 S.W.3d at 532. Rather, a photo array must
contain individuals who fit a rough description of the suspect. Colgin, 132 S.W.3d
at 532; see also Wilson v. State, 15 S.W.3d 544, 553 (Tex. App.—Dallas, pet. ref’d). 
Here, O’Neal contends that the photo array was impermissibly suggestive because he
was the only individual wearing a red shirt and the other individuals depicted in the
array wore neutral tones. 
          Detective McCoy of the Harris County Sheriff’s Department created the photo
array. He testified that he entered the description of O’Neal given to him by Kennetta
and Thomas Douglas into his computer. The computer then generated many pictures
of individuals with similar characteristics. McCoy testified that he carefully selected
the other men in the array, looking specifically for African-American males close to
the same age as O’Neal. McCoy reviewed between seventy-five and one hundred
photographs before making the photo grouping, seeking a fair representation of
individuals that matched the complainants’ description of O’Neal. 
          The photographic array is part of the record on appeal. It consists of six, short-haired black males, who exhibit similar facial features. There are no gross disparities
in age among the six men. While two of the photographs display somewhat lighter
backgrounds, all six of the photographs are in color. We also note that the photos
show only the men’s faces and necks, and as a result, only a small portion of the
individuals’ shirts can be seen. The array shows three men in what appear to be white
shirts, one man in a dark colored shirt, O’Neal in a blue, white, and red striped shirt,
and the color of one man’s shirt cannot be determined. Although Thomas and
Kennetta told Detective McCoy that one of the suspects wore a “red or orange” shirt,
McCoy testified that he selected the most recent photographs of the individuals to get
the most accurate reflection of the subject’s appearance. All of the individuals in the
photo array fit the description of O’Neal. We hold that the photo array is not unduly
suggestive merely because O’Neal is the only one wearing a shirt with a red stripe. Substantial Likelihood of Misidentification
          Even if we assume that the pretrial identification procedure was impermissibly
suggestive, given the totality of circumstances in this case, we do not think that the
photo array created a substantial likelihood of misidentification. The following five
non-exclusive factors should be “weighed against the corrupting effect of any
suggestive identification procedure in assessing reliability under the totality of
circumstances”: (1) the opportunity of the witness to view the criminal at the time of
the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior
description of the criminal; (4) the level of certainty demonstrated by the witness at
the confrontation; and (5) the length of time between the crime and the confrontation. 
Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382; Ibarra v. State, 11 S.W.3d 189, 195
(Tex. Crim. App. 1999). We consider the five Biggers factors, all issues of historical
fact, deferentially in a light favorable to the trial court’s ruling. Ibarra, 11 S.W.3d
at 195. The factors, viewed in this light, are then weighed de novo against “the
corrupting effect” of the suggestive pretrial identification procedure. Id. at 195-96
(citing Loserth, 963 S.W.2d at 773-74). 
Opportunity to View
          First we address Kennetta’s opportunity to view O’Neal during the crime. 
Kennetta stated that, although she did not focus exclusively on O’Neal, she “got a
good enough look at him.” The crime occurred during the day, and Kennetta viewed
O’Neal in the living room of her home. Kennetta further testified that she viewed
O’Neal for a period of one to two minutes. These facts suggest that Kennetta had an
adequate opportunity to view O’Neal during the crime. 
Degree of Attention
          Under the second factor, we consider Kennetta’s degree of attention during the
commission of the offense. Kennetta’s own testimony demonstrates that she paid
close attention to O’Neal. Specifically, she testified that “I know if I wanted to get
the person who did this I know that I would eventually have to identify them. So I
was concentrating on the facial features a lot.” Given these facts, we conclude that
Kennetta was adequately attentive during the intrusion. 
Accuracy of Description
          We next consider the accuracy of Kennetta’s prior description of O’Neal. She
told the police that she viewed two black males, one with an “Afro” and one with
braids. She also stated that the men were between 5’8” and 6’ tall. As O’Neal states
in his brief, the record is silent as to how well he matches that description. 
Moreover, O’Neal concedes that here, when the record is silent as to how well he
matches Kennetta’s description, this factor is of little benefit. 
Level of Certainty
          Next, we consider the level of certainty Kennetta demonstrated at the time of
the confrontation. Kennetta stated that when she first viewed the photo array she was
“pretty sure” that O’Neal was the individual that broke into her home. Nonetheless,
she took her time in viewing the photo array and focused on the individuals very
carefully. She testified that she was “really trying to concentrate and make sure that
I picked the right person.” During her in-court identification Kennetta stated she was
“pretty sure” that O’Neal was the man she saw in her living room during the intrusion
and that she did not believe that the State charged the “wrong guy.” 
Time Between Crime and Confrontation
          Finally, we consider the lapse of time between the alleged act and the time of
the confrontation. This factor seems to weigh in Kennetta’s favor. Kennetta
identified O’Neal in the photo array on the same day the crime occurred, and
identified O’Neal in court only seven months later. At trial, Kennetta easily recalled
the details of the crime and her description of O’Neal. Thus, the seven-month time
period had no discernable effect on her ability to recall the details of the crime or her
in-court identification of O’Neal. 
          Viewing these facts in a light most favorable to the trial court’s ruling, we find
that Kennetta had sufficient opportunity to view O’Neal and paid particular attention
to him during the crime. Further, she never wavered in her pretrial or her in-court
identification of O’Neal. Weighing this evidence of reliability against any possible
suggestiveness of the photo array, we conclude that the totality of circumstances of
the case do not present a substantial likelihood of mistaken identification. Thus, the
trial court did not err in allowing Kennetta’s in-court identification of O’Neal. 
Conclusion
          We hold that: (1) O’Neal waived his complaint regarding Thomas’s in-court
identification testimony; and (2) the photo array is not unduly suggestive, but
assuming that it is, the Biggers factors show that no substantial likelihood of mistaken
identification occurred; thus, the trial court did not err in allowing Kennetta’s in-court
identification of O’Neal. We therefore affirm the judgment of the trial court. 
 
                                                             Jane Bland
                                                             Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.
Do not publish. Tex. R. App. P. 47.2(b).