Opinion issued March 3, 2005






 



 
 





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01203-CR




JOSHUA JERMAINE JEFFERSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 946,791




MEMORANDUM OPINION
          Joshua Jermaine Jefferson, appellant, pleaded not guilty to aggravated robbery. 
The jury found him guilty and assessed punishment at seven years’ confinement. In
his sole issue, appellant contends that the trial court erred in allowing appellant’s in-court identification because of a suggestive pretrial photospread. We affirm.
BACKGROUND
          On March 29, 2003, Alicia Colaceci, the complainant, and her three-year-old
son parked her car in the parking lot of her apartment complex. As she waited a few
minutes to let her son get himself out of the car, she noticed two men standing on a
nearby corner. The two men started walking along the sidewalk before one
approached Colaceci, cocked an automatic pistol, and put it to her head. After the
gunman had demanded her purse, she handed it to him. The gunman then put the
pistol in his pocket and walked away.
          Colaceci drove to her mother-in-law’s house and called the police. She gave
a description of her assailant to a deputy sheriff from the Harris County police
department. She described her assailant as “a black male between the ages of 18 and
22, approximately 5'9"-5'10", wearing a Georgetown [University] jacket.” Colaceci’s
purse, which contained one money order in the amount of $500 and another in the
amount of $105, was the only item she reported missing. Colaceci reported the theft
of the two money orders to the issuer, who told her that copies of the money orders
would be sent to her when they were cashed. 
          Approximately two weeks after the robbery, Colaceci received copies of the
cashed money orders from the issuer. The payee on the $105 money order was named
as Houston Bargain Center while the payee on the $500 order was named Gold Touch
Jewelry. Colaceci contacted Detective C. Brown of the Harris County Sheriff’s
Office. Brown interviewed Mr. Meghjiani of Houston Bargain Center and the owner
of Gold Touch Jewelry, Mr. Abrilian. Brown discovered that the money orders were
exchanged by appellant at each of their respective businesses for goods.
          Brown created a six-photograph array, which included a photograph of
appellant. On April 23, 2003, before viewing the photographs in the array, Brown
gave Colaceci written instructions concerning the photo array that she read and
signed. Colaceci then looked at the photo array and identified appellant as her
assailant. After she looked at the photographs for between five and ten minutes,
Colaceci announced that she was “90 % sure” that appellant was the man who robbed
her. However, upon further reflection and examination of the photographs, Colaceci
declared that she was 100 % sure that appellant, the man in photograph No. 4, was
the person who robbed her.
          Brown then showed a copy of the same photo array to Mr. Abrilian. Abrilian
also identified appellant as the person who used the $500 money order that was stolen
from Colaceci to purchase gold earrings from his store. 
          Before trial, appellant filed a motion to suppress Colaceci’s identification. The
trial court conducted a hearing outside the presence of the jury on appellant’s motion,
which consisted of the testimony of Colaceci and Detective Brown. The trial court,
although admitting that it was not “the best photospread I have ever seen,” found that
there was nothing particularly suggestive about it and that, assuming Colaceci could
actually identify appellant in court, the identification of appellant was not tainted. 
          At the hearing, Colaceci identified appellant as the person who robbed her on
the night of the incident in question. She testified that her memory of the person who
robbed her was based on the event of the robbery and not on seeing his photograph
in the photo array or any other source. After her testimony, the trial court found that
Colaceci’s in-court identification was not tainted and that it was based on her
independent recollection of the events of March 29, 2003. 
            At trial, appellant testified that he admitted to using the money orders that
allegedly had been stolen from Colaceci, but denied committing the charged offense. 
Appellant claimed that he came into possession of the money orders when he
purchased them from a customer of his automobile detail shop.
In Court Identification
          In his sole point of error, appellant contends the trial court erred in admitting
an in-court identification because it was based on an impermissibly suggestive photo
array.
          We defer to a trial court’s determination of historical facts supported by the
record when the trial court finds facts based upon an evaluation of the credibility and
demeanor of the witnesses. Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App.
1998). We similarly defer to the trial court’s rulings on mixed questions of law and
fact when they turn on the credibility of witnesses. Id. We review de novo, however,
mixed questions of law and fact that do not turn on an evaluation of credibility and
demeanor. Id. at 772-73. Here, the admission of the in-court identification does not
turn on a credibility evaluation and, therefore, we review it de novo.
            In-court identifications are inadmissable when tainted by an unduly suggestive
pretrial identification. Id. at 771-72; Colgin v. State, 132 S.W.3d 526, 531-32 (Tex.
App.—Houston [1st Dist.] 2004, no pet.). To determine whether a trial court
correctly admitted an in-court identification, we employ a two-step analysis, and
determine (1) whether the pretrial identification was impermissibly suggestive, and,
if so, (2) whether the suggestive pretrial identification gave rise to a substantial
likelihood of irreparable misidentification at trial. Delk v. State, 855 S.W.2d 700, 706
(Tex. Crim. App. 1993); Loserth v. State, 985 S.W.2d 536, 543-44 (Tex. App.—San
Antonio 1999, pet. ref’d) (on remand). In order for an in-court identification to be
inadmissible, a defendant must demonstrate the existence of both elements by clear
and convincing evidence. Colgin, 132 S.W.3d at 532. If a court finds that a pretrial
identification procedure was impermissibly suggestive, it then must consider the
factors enumerated in Neil v. Biggers to determine whether the suggestive procedure
gave rise to a substantial likelihood of irreparable misidentification. 409 U.S. 188,
199-200, 93 S. Ct. 375, 382 (1972).
          Neither due process nor common sense requires that the individuals in a lineup
exhibit features exactly matching the accused. Turner v. State, 600 S.W.2d 927, 933
(Tex. Crim. App. 1980); Colgin v. State, 132 S.W.3d 526, 532 (Tex. App.—Houston
[1st Dist.] 2004, pet. ref’d). Rather, a photo array must contain individuals who fit
a rough description of the suspect. Wilson v. State, 15 S.W.3d 544, 553 (Tex.
App.—Dallas 1999, pet. ref’d). There is no standard as to the similarities required
of the subjects used in a pretrial identification procedure, only that there not be a
likelihood of irreparable misidentification. See Clay v. State, 702 S.W.2d 747, 749
(Tex. App.—San Antonio 1985, pet. ref’d).
          Here, appellant contends that the photo array was impermissibly suggestive
because there were significant differences in the appearances of the men in the
photographs in the six-photo array. Specifically, appellant argues that appellant was
darker in skin color than all but one other person, younger in appearance, and less
heavy than the other people in the photo array. According to Detective Brown, the
photo array contained six photographs of black males who appeared to be from the
same age group and that, although they did not all look exactly the same, they had
similar features. While subjects in a photographic array do not need to be identical,
their similarities in appearance should provide a reasonable test for the witness’s
capacity to reliably identify the perpetrator. Escovedo v. State, 902 S.W.2d 109, 117
(Tex. App.—Houston [1st Dist.] 1995, pet. ref’d) (holding that six-person
photographic array was not unduly suggestive where only one other photograph
besides appellant’s had a tear drop tattoo by the eye); Ford v. State, 794 S.W.2d 863,
866 (Tex. App.—El Paso 1990, pet. ref’d) (differences in hair lengths were not
suggestive); Buxton v. State, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985) (pretrial
lineup was not unduly suggestive, even though height, weight, and skin tone of
individuals in lineup varied). 
          The individuals participating in the line-up fit the rough description of
appellant. We hold that the line-up was not impermissibly suggestive and did not
constitute an unfair lineup. See Wilson, 15 S.W.3d at 553. Because we conclude that
the pretrial identification procedures were not impermissibly suggestive, we need not
address whether those procedures created a substantial likelihood of
misidentification. See Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).
          We overrule appellant’s point of error. 
CONCLUSION
          We affirm the judgment of the trial court.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice


Panel consists of Chief Justice Radack and Justices Higley and Bland.
Do not publish. Tex. R. App. P. 47.2(b).