# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00094-CR

**Collin Smith, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-05-500237, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Collin Smith of the offense of murder. *See* Tex. Penal Code Ann. § 19.02(b)(1) (West 2003). The jury assessed punishment at 52 years' imprisonment and a $5,000 fine. In two points of error, Smith asserts that (1) the district court erred in denying his motion to suppress a pretrial photographic identification of Smith as the perpetrator, and (2) the judgment should be modified to reflect that the trial court, rather than the jury, made a finding that a firearm was used during the commission of the offense. We will affirm the judgment.

## BACKGROUND

The underlying facts of this case are undisputed on appeal. The jury heard evidence that on the evening of April 18, 2005, Smith and several other individuals met at the home of Michael Mendez to complete a drug transaction. The alleged participants were Smith, Mendez, Kermit Maxwell, Timothy Chapa, Ruben Gonzales, Robert Leal, and Valentin Ramirez. Mendez

testified that he arranged for Smith and Maxwell to purchase a kilo of cocaine supplied by Ramirez for $16,000. According to Mendez, after Ramirez showed the cocaine to Smith and Maxwell, and while Ramirez and Gonzales were counting the money, Smith and Maxwell pulled out firearms. Violence ensued, and Ramirez, Gonzales, and Leal were shot. Mendez testified that Smith then grabbed the cocaine and cash and fled the scene with Maxwell. Gonzales and Leal survived their injuries. Ramirez, however, died from a gunshot wound to his chest.

During the police investigation of the homicide, Gonzales, Mendez, and Leal were each shown a photographic array of six individuals and asked to identify which one of the individuals, if any, was the assailant. Each of the men identified Smith in the array. In a separate photo array, the men also identified Maxwell.

The State charged both Smith and Maxwell with Ramirez's murder. The State alleged that Smith was the shooter and that Maxwell was a party to the offense. The two defendants were tried separately. In Maxwell's trial, the jury found him guilty of murder. This Court affirmed Maxwell's conviction on appeal. *See Maxwell v. State*, No. 03-06-00473-CR, 2007 Tex. App. LEXIS 6356 (Tex. App.—Austin Aug. 6, 2007, pet. dism'd). In Smith's trial, the jury likewise found that defendant guilty of murder. During sentencing, Smith pleaded true to enhancement paragraphs alleging prior drug convictions. The jury assessed punishment at 52 years' imprisonment. The written judgment of conviction reflected an affirmative finding that Smith used a deadly weapon, a firearm, in the commission of the offense. This appeal followed.

2

**DISCUSSION**

**Motion to suppress**

In his first point of error, Smith asserts that the district court erred in denying his motion to suppress the pretrial photographic identification of Smith by witnesses Gonzales, Mendez, and Leal. Smith claims that the photo array was "impermissibly suggestive" because he was the only individual in the lineup with his head "cocked to the side and his eyes directed off-center." Additionally, according to Smith, because the police "did not change the order of the photos in the array from one witness to the next," the witnesses had "the opportunity to communicate with each other about the array." Smith contends that these "faulty procedures" violated his due process rights. *See* U.S. Const. amend. V, XIV. Smith further contends that all subsequent evidence obtained against him should be suppressed as "poisoned fruit" of the improper identification.[1]

The *Guzman* standard of review applies to a trial court's ruling on a motion to suppress evidence based on a claim that an impermissibly suggestive pretrial identification procedure violated the defendant's due process rights. *See Loserth v. State*, 963 S.W.2d 770, 771 (Tex. Crim. App. 1998) (citing *Guzman v. State*, 955 S.W.2d

---

[1] Although the State acknowledges that Smith's "objections during the pretrial hearing on the motion to suppress identification and the trial court's adverse ruling on that motion were sufficient to preserve any alleged error for review on the grounds voiced at the pretrial hearing," it argues that Smith has waived this complaint by not raising it on appeal. Instead, the State contends, Smith makes only his "fruit of the poisonous tree" argument, and adds that he did not raise that argument below. Because we conclude below that the district court did not err in finding that the photo lineup was proper and not impermissibly suggestive, and this is decisive of both arguments, we need not address the State's waiver arguments. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (establishing that "fruit of the poisonous tree" doctrine applies to "illegal" police activity). We similarly need not address the State's contention that Smith waived error through his subsequent testimony at Maxwell's trial.

85, 89 (Tex. Crim. App. 1997)); *Moore v. State*, 140 S.W.3d 720, 729-30 (Tex. App.—Austin 2004, pet. ref'd). Under the *Guzman* standard, almost total deference is afforded to the trial court's determination of the facts, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *Moore*, 140 S.W.3d at 730. The same amount of deference is given to mixed questions of law and fact if the resolution of those ultimate questions turns on an examination of credibility and demeanor of the witnesses. *Id*. However, if mixed questions of law and fact do not relate to credibility and demeanor, then the trial court's determinations are reviewed de novo. *Id*. Whether a photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor. *Loserth*, 963 S.W.2d at 773; *Moore*, 140 S.W.3d at 730; *Brown v. State*, 64 S.W.3d 94, 98 (Tex. App.—Austin 2001, no pet.). Accordingly, we apply a de novo standard of review. *See Moore*, 140 S.W.3d at 730.

In considering the scope of due process rights afforded a defendant with regard to the admission of identification evidence, a pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Determining the admissibility of an in-court identification involves a two-step analysis: (1) whether the out-of-court identification procedure was impermissibly suggestive, and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995); *Brown*, 64 S.W.3d at 99. Each case must be considered on its own facts and merits. *Simmons*, 390 U.S.

4

at 384. Moreover, the analysis requires an examination of the totality of the circumstances. *Id*.; *Brown*, 64 S.W.3d at 99.

The defendant must prove the foregoing two elements by clear and convincing evidence. *Barley*, 906 S.W.2d at 33-34; *Moore*, 140 S.W.3d at 730. If a defendant meets this "heavy burden," then the in-court identification is inadmissible. *Moore*, 140 S.W.3d at 730. It must be remembered in a due process analysis that even if a pretrial procedure is suggestive, it does not mean it is impermissibly so. *Barley*, 906 S.W.2d at 33; *Moore*, 140 S.W.3d at 730. If it is determined from the totality of the circumstances that no *impermissibly* suggestive procedure was utilized, then there is no need to evaluate whether the procedure created a substantial likelihood of misidentification. *Barley*, 906 S.W.2d at 34; *Moore*, 140 S.W.3d at 730-31. Conversely, even if the totality of the circumstances reveal an impermissibly suggestive pretrial procedure, there may be no substantial likelihood of misidentification. *Simmons*, 390 U.S. at 383; *Brown*, 64 S.W.3d at 99.

In this case, the "impermissibly suggestive" element is dispositive. The court of criminal appeals has explained:

> Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array. Or it may also be created by the content of the line-up or photo array itself if the suspect is the only individual closely resembling the pre-procedure description. Furthermore, an individual procedure may be suggestive or the cumulative effect of the procedures may be suggestive.

*Barley*, 906 S.W.2d at 33 (internal citations omitted). Furthermore, "a lineup is considered unduly suggestive if other participants are greatly dissimilar in appearance from the suspect."

5

*Withers v. State*, 902 S.W.2d 122, 125 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (citing *United States v. Wade*, 388 U.S. 218, 232-33 (1967)). For example, a suspect may be greatly dissimilar in appearance from the other participants because of his distinctly different appearance, race, hair color, height, or age. *See id*. (citing *Foster v. California*, 394 U.S. 440, 442-43 (1969)). However, minor discrepancies between individuals in the array will not render the lineup impermissibly suggestive. *See McClenton v. State*, 167 S.W.3d 86, 96 (Tex. App.—Waco 2005, no pet.). Neither due process nor common sense requires that the individuals in a lineup exhibit features exactly matching the accused. *Colgin v. State*, 132 S.W.3d 526, 532 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Turner v. State*, 600 S.W.2d 927, 933 (Tex. Crim. App. 1980)). Rather, a photo array must contain individuals who fit a rough description of the suspect. *Wilson v. State*, 15 S.W.3d 544, 553 (Tex. App.—Dallas 1999, pet. ref'd).

Turning to the facts of this case, the only witness to testify at the hearing on the motion to suppress was Detective William Poole of the Travis County Sheriff's Office, the detective who conducted the photo lineups. The lineups were also admitted into evidence. Detective Poole testified that each witness was shown a copy of the array at separate times; Gonzales and Leal were shown the array in their hospital rooms on April 21 and 22, 2005, respectively, while Mendez was shown the array at Poole's office on April 21. None of the witnesses were together when they were shown the arrays. Poole testified that he was the only law enforcement agent present during each identification. According to Poole, the only other individuals present were, in the case of Gonzales, nursing staff and Gonzales's mother; in the case of Mendez, Mendez's spouse; and, in the case of Leal, nursing staff. Prior to showing the witnesses the array, Poole explained to the witnesses that

6

he "had a photo array of six individuals. If the second individual that we were trying to identify was one of those, for him to specify and point that individual out. If he did not observe that individual amongst the six, then to advise me of such." Poole testified that he did not suggest to the witnesses which photo they should select. According to Poole, each witness, when the witness identified Smith in the fifth photograph on the array, did so by "point[ing] to the exact picture." Poole then requested that each witness initial the photo. Mendez and Leal did so, but Gonzales did not, out of "fear of retaliation." Therefore, Poole initialed the photo that Gonzales identified. Poole testified that he showed each witness "[a] clean copy of the exact same photo array" that did not include the initials of the other witnesses.

On cross-examination, Detective Poole agreed with Smith that the individual in the fifth photograph was "the only one who had his head turned slightly to the left." However, Poole testified that the individual in the fifth photograph (Smith) "seem[ed] to have similar eye position" as the individual in the fourth photograph. Poole testified that he did not show the witnesses any arrays that had neither Smith nor Maxwell in them, and he did not "change the position that Mr. Smith was to be found in from one photo lineup spread to the next." Also, Poole "could not be sure" whether the witnesses were still having contact with one another during the period in which Poole was conducting the lineups.

At the conclusion of the hearing, the district court denied Smith's motion to suppress the identification:

> At this time, after considering the evidence of the detective, as well as the photo lineups themselves, State's Exhibits Nos. 1, 2 and 3, the court finds that all three photo lineups were proper and not impermissibly suggestive, and that they were

7

presented properly, based on the evidence I heard. The court will deny the defense's motion to suppress identification.

On this record, we conclude that the district court did not err in its ruling. Although Smith appears to be the only individual in the array with his head turned slightly to the left and his eyes directed downward, the other individuals in the lineup are not "greatly dissimilar in appearance from the suspect." *See Withers*, 902 S.W.2d at 125. In fact, they each "fit a rough description of the suspect." *See Wilson*, 15 S.W.3d at 553. All six individuals in the array are young black males with similar facial features, hair length, and facial hair.

Moreover, there is nothing in the record to demonstrate that the pretrial identification was impermissibly suggestive because of the manner in which the procedure was conducted. *See Barley*, 906 S.W.2d at 33. Poole testified that, prior to the identifications, he did not point out the suspect or suggest in any way that the suspect was included in the array. *See Barley*, 906 S.W.2d at 33. In fact, Poole told the witnesses to advise him that the individual was not in the lineup if they could not identify the individual. And, Poole testified that he showed each witness a "clean copy" of the array without the initials of the other witnesses. As for Smith's contentions that Detective Poole should have used arrays that did not include Smith, and changed the order of the photographs in the array to prevent the witnesses from communicating with each other about the array, Smith cites to no authority that requires such procedures, nor are we aware of any.

On this record, we find that Smith has not proven by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive. We overrule Smith's first point of error.

**Deadly weapon finding**

In his second point of error, Smith asserts that there is error in the written judgment of conviction. Specifically, Smith contends that the judgment reflects a jury finding that a firearm was used in the commission of the offense, but, according to Smith, the "jury's verdict included no such finding."

We disagree. The indictment alleged that Smith used a firearm in the commission of the offense. The court's charge tracked the language of the indictment and instructed the jury to find the defendant guilty if it believed from the evidence beyond a reasonable doubt that Smith "intentionally or knowingly cause[d] the death of an individual, namely, Valentin Ramirez, by shooting Valentin Ramirez *with a firearm*." (Emphasis added). A firearm is a deadly weapon per se. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2007). Accordingly, the jury, by its verdict of guilty, necessarily made an affirmative finding that a deadly weapon, specifically a firearm, was used in the commission of the offense. *See Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985) (holding that deadly weapon finding arises "as a matter of law" if "the trier of fact finds that a [firearm] has been used in the commission of the offense . . . since a [firearm] is a deadly weapon per se.") Thus, the written judgment of conviction correctly reflects the jury's finding.

We overrule Smith's second point of error.

## CONCLUSION

Having overruled Smith's points of error, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   May 22, 2008

Do Not Publish