# NO. 12-09-00254-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSHUA HAROLD GOLMON,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 173RD* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Joshua Harold Golmon appeals his conviction for aggravated sexual assault of a child, for which he was sentenced to imprisonment for fifty years. In two issues, Appellant contends that (1) an impermissibly suggestive photographic lineup was improperly admitted into evidence and (2) the evidence is legally insufficient to support the trial court's judgment. We affirm.

## BACKGROUND

On or about March 27, 2008, M.L., a twelve-year-old child, reported that she was sexually assaulted. According to M.L., a white male with tattoos on his arms and neck, who was driving a white Chevrolet Trailblazer, abducted her. Thereafter, the man drove her to a remote field near County Road 2832 in Henderson County, Texas. Once there, he removed M.L. from the vehicle, struck her when she tried to escape, threatened to shoot her, and sexually assaulted her. M.L. later identified Appellant in a photographic lineup.

Appellant was charged by indictment with aggravated sexual assault and pleaded "not guilty." The matter proceeded to a jury trial. Ultimately, the jury found Appellant "guilty" as charged. The matter proceeded to a bench trial on punishment, after which the trial court sentenced Appellant to imprisonment for fifty years. This appeal followed.

In his first issue, Appellant argues that the photographic lineup by which M.L. identified him was impermissibly suggestive and, as a result, there was a great likelihood that he was misidentified as her assailant. Thus, Appellant contends, the trial court erroneously admitted the photographic lineup into evidence.

## Standard of Review

We defer to a trial court's determination of historical facts supported by the record when the trial court finds facts based upon an evaluation of the credibility and demeanor of the witnesses. *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998). We similarly defer to the trial court's rulings on mixed questions of law and fact when they turn on the credibility of witnesses. *Id.* We review de novo mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Id.* at 772–73. Here, the admission of the photo array does not turn on a credibility evaluation, and, therefore, we review it de novo.

## The Identification Procedure

A pretrial identification is inadmissible when (1) it is impermissibly suggestive and (2) gives rise to a substantial likelihood of irreparable misidentification at trial. *See Loserth v. State*, 985 S.W.2d 536, 543–44 (Tex. App.–San Antonio 1999, pet. ref'd). Appellant must demonstrate the existence of both elements by clear and convincing evidence. *See id.*

Neither due process nor common sense requires that the individuals in a lineup exhibit have features exactly matching those of the accused. *Turner v. State*, 600 S.W.2d 927, 933 (Tex. Crim. App. 1980); *Colgin v. State*, 132 S.W.3d 526, 532 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd). Rather, a photo array must contain individuals who fit a rough description of the suspect. *Wilson v. State*, 15 S.W.3d 544, 553 (Tex. App.–Dallas 1999, pet. ref'd).

Here, Appellant contends that the photo array was impermissibly suggestive because he was the only person in the six person array with tattoos on his neck. The State stipulates that Appellant's neck tattoos are visible in the picture, but contends that this discrepancy is small and not obvious in the photograph. We have observed a color copy of the photographic lineup in the record. Based on our review of this evidence, we conclude that the description of Appellant's neck tattoos as "small" and "not obvious" is a generous description. In fact, the tattoos on Appellant's neck are barely visible and very unlikely to be noticed unless the observer is alerted to their existence. These tattoos

could be, in this court's opinion, easily mistaken for a shadow or hair on Appellant's neck. Each of the men in the photographic array appear to be Anglo-American, are dressed in casual civilian clothes, exhibit some facial hair, have short, dark hair, and appear similar to Appellant in age, size, and build. Moreover, in each picture, there is a small degree of shadowing along the neckline similar to what the State stipulates are visible neck tattoos in Appellant's picture. Therefore, based on our review of the evidence in this case, we conclude that the photo array at issue was not impermissibly suggestive. Thus, we hold that the trial court did not err in introducing the photographic lineup into evidence. Appellant's first issue is overruled.

## LEGAL SUFFICIENCY

In his second issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment. Appellant concedes that there is evidence to support each element of the offense of aggravated sexual assault. However, Appellant contends that this evidence does not rise to the level to allow the jury to find that Appellant was guilty beyond a reasonable doubt.

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's verdict. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Our role is that of appellate review, and the fact finder is the sole judge of the weight and credibility of a witness's testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Moreover, the legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that

"accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

In the case at hand, to support Appellant's conviction for aggravated sexual assault of a child, the State was required to prove that Appellant intentionally or knowingly caused the sexual organ of M.L., a child, to contact his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii) (Vernon Supp. 2009). We note that the testimony of a child sexual offense victim alone is sufficient to support a conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978).

M.L. testified as the State's first witness. M.L. stated that she was twelve years old at the time in question. M.L. further stated that she was walking home from a friend's house when she saw a white Chevrolet Trailblazer stop on the side of the road. M.L. testified that she continued to walk and even increased her pace, but that a man grabbed her and placed her in the front seat of the white Chevrolet Trailblazer. According to M.L., the man, whom she described as a white male with dark hair and tattoos on his arms and neck, drove to a house he told her belonged to his cousin. M.L. testified that when the man's cousin did not respond to numerous honks of M.L.'s car horn or a call from his cellular telephone, her abductor drove her into a remote field. When the man stopped the car, M.L. exited the car and attempted to escape only to be caught before she could reach the road. The man took her back to the area by his vehicle and struck her in the lip. According to M.L., the man told her to remove her pants. M.L. testified that she initially refused to comply, but when the man threatened to shoot her, she relented and removed her pants and underwear. M.L. stated that the man, who had removed his pants and placed a plastic bag over his "private part," pushed her to the ground, got on top of her, and put his "private part" inside her vagina. M.L. testified that the man eventually got back into his truck and drove off, striking her leg and her side as he departed.

Sheriff's deputy Robert Powers testified concerning his investigation of the scene on the night in question. Powers stated that he located a red cellular telephone in a black carrying case in a ditch off the roadway at or near the scene. Powers also stated that he located a small pair of pink women's underwear at the scene.

Henderson County Sheriff's Department Major Kevin Hanes testified that he was able to call another cellular phone from the phone located at the scene to ascertain the telephone number associated with the phone found at the scene. He also stated that Appellant later told him his cellular phone number. Hanes further testified that, through a subpoena, he was able to get records from the cellular telephone carrier related to the phone found at the scene. Hanes stated that those records indicated that the phone found at the scene belonged to Appellant. Hanes further stated that he went to Appellant's place of business to serve the arrest warrant. According to Hanes, Appellant was not at work that day. However, Hanes testified that Appellant's boss informed him that Appellant drove a white Chevrolet Trailblazer. Hanes also testified concerning the photographic lineup he conducted pertaining to the case at hand. Hanes stated that when M.L. was presented with the photographic lineup, she immediately circled Appellant's picture. Hanes further made an in-court identification of Appellant as the same person M.L. had circled in the photographic lineup.

Examining the aforementioned evidence in the light most favorable to the jury's verdict, we conclude that the jury could have reasonably determined beyond a reasonable doubt that Appellant intentionally or knowingly caused the sexual organ of M.L., a child, to contact his sexual organ. Therefore, we hold that the evidence is legally sufficient to support the jury's verdict. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the trial court's judgment.

    **SAM GRIFFITH**
Justice

Opinion delivered September 1, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)