# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00265-CR

**Ivory Moore, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT NO. 3021064, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## O P I N I O N

Appellant Ivory Moore appeals his conviction for burglary of a habitation. *See* Tex. Pen. Code Ann. § 30.02(a)(1), (d)(1) (West 2003). The jury found appellant guilty and also found that the allegations in the indictment as to the two prior felony convictions were "true." The jury assessed appellant's punishment at life imprisonment. *See id*. § 12.42(d) (West 2003).

### Points of Error

Appellant advances three points of error. In his first point of error, appellant contends that the trial court erred in overruling his pretrial motion to suppress the in-court identification of

appellant by Police Officer Greenwalt. In his second point of error, appellant asserts that his trial counsel rendered ineffective assistance of counsel in violation of his constitutional rights. In his third point of error, appellant challenges the factual sufficiency of the evidence to sustain his burglary conviction.

## Background

On Sunday afternoon, May 19, 2002, Nora Garcia was at her home at 1014 Quail Park in Austin. She was alone except for her one-year-old son. Garcia heard the door bell ringing and ringing. She looked through the peephole in the front door and saw two men that she did not know. She later identified appellant as the man ringing the doorbell. Garcia believed that the men were friends of her brother who had moved from that address. She did open the door. Garcia returned to her own room, turned off the television set, and locked the bedroom door. Shortly thereafter, Garcia heard glass breaking and hitting the kitchen floor. She called 911 on her cellular telephone, climbed out a window with her son, and went to a neighbor's house, while keeping the 911 operator or police dispatcher on the telephone.

Austin Police Officer Jeffrey Greenwalt testified that on the afternoon in question he was dispatched to the scene of a burglary in progress. He and Officer Brian Preusse arrived at 1014 Quail Park at approximately the same time. Greenwalt observed a four-door car backed into the driveway. The record shows that it was a blue 1983 Pontiac Bonneville bearing Texas license plate number C40MTL. Greenwalt contacted the dispatcher and gave a description of the car. Because two men had been reported to be on the premises, Greenwalt and Preusse awaited a backup unit. They walked into different areas to keep a surveillance on the house. Greenwalt heard a commotion

near the front door and yelled to Preusse. Greenwalt saw appellant come out of the front door with items in his hands. With his service weapon drawn, Greenwalt ordered appellant to stop and drop the items in his hands. Appellant did so, but looked first to the front door and then to the parked car. Suddenly, appellant darted to the car followed by Officer Preusse. Greenwalt got in front of the car while Preusse struggled to extract appellant from the driver's seat. Appellant managed to get the car started and drove away, dragging Preusse a short distance. Greenwalt jumped out of the way. No shots were fired.

Officer Preusse testified that he arrived about the same time as Greenwalt. He saw the parked car with television sets in the back seat. Preusse went to the northwest side of the house while Greenwalt was on the southwest side. Preusse heard Greenwalt say someone was coming out of the front of the house. Preusse drew his weapon and then saw a black male, six-foot tall, athletic build, with Afro style hair wearing a shirt and blue shorts. Preusse ordered the man to get on the ground. Instead, the man moved rapidly to the parked car. Preusse holstered his weapon and gave chase. When Preusse grabbed the suspect's shirt, it ripped. Preusse struggled to remove the suspect from the car, but the car started and dragged Preusse about thirty feet. Preusse's description of the suspect was not challenged. At trial, however, he was unable to make an in-court identification of appellant.

Ruth Ann Easley, an Austin Police Department employee, testified that in late May or early June 2002, appellant, whom she identified, came to her office to purchase a copy of the offense report of the burglary in question. He did not have the case number. Easley, however, obtained his name, the specific burglary report requested, the location, and the date of the offense.

3

She located the report and while she examined it, appellant carried on a conversation about the offense. Appellant told Easley that he "didn't want to go down for this by myself." He added that his cousin in San Antonio had the stolen property. Easley informed appellant that she was not the one to tell and offered him the telephone number of a police investigator. Appellant declined the offer, saying that he did not trust the police, that a police officer broke his nose while he was seated in the car. Easley later reported the conversation to a detective.

Garcia's testimony was that a stereo, television sets, and some of her mother's jewelry were taken in the burglary of her home and never recovered.

Austin Police Officer Joseph Wallace testified that, while on patrol on January 17, 2002, he stopped a 1983 Pontiac four-door vehicle with license plate number C40MTL. Wallace issued two traffic citations to Ivory Moore, who was the driver. The citations introduced into evidence reflect the driver was a six-foot-tall black male with a date birth of "9-22-63." Officer Wallace was unable to make an in-court identification of appellant but stated that appellant looked "familiar."

Appellant denied any involvement in the burglary and offered alibi evidence. Appellant testified that about 11:20 a.m. on May 19, 2002, he went to the home of Gwendolyn White to make home repairs. He and White then went to the Home Depot store for supplies and returned. Appellant did not leave the White house until three or four o'clock in the afternoon.

Appellant stated that he sold the blue 1983 Pontiac to Christopher Washington on March 7, 2002, and on May 19, 2002, he was driving a gray 1980 Mercury Zephyr. Appellant denied confessing to the crime when purchasing a copy of the offense report. He related that he told Easley,

4

"I said, I'm not going down for nobody's crime that I didn't commit." Appellant denied having any knowledge where the stolen property was located. Appellant stated that he did not know a Terrence Yarbrough. Appellant did acknowledge that he had been twice previously convicted of the two felonies alleged in the indictment.

Gwendolyn White generally corroborated appellant's testimony about the time spent at her house and the trip to Home Depot. She stated that appellant was driving a gray car on the day in question. Appellant also offered the testimony of relatives as to his use and sale of the blue 1983 Pontiac. Datron Owens, a cousin, testified that appellant sold the blue car to Christopher Washington near the end of February 2002; that Washington sold the car to Terrence Yarbrough before the date of the burglary on May 19, 2002. Owens added that appellant was driving a gray Thunderbird at the time in question. LaRay Moore, a nephew, testified that appellant sold the blue car to Washington "around" January 2002. Moore got married on May 4, 2002, and saw Washington driving the blue car on that day. Monica, Moore's wife, testified that she had not seen appellant in the blue car since February 2002, and knew appellant sold the car to Washington. Josephine Moore, appellant's mother, related that appellant lived with her. She knew that he sold the blue Chevrolet or Pontiac to Washington in late February or early March 2002.

Austin Police Officer Stephen Barnes was called by appellant as a witness. On May 22, 2002, Barnes stopped a blue 1983 Pontiac with license plate number C40MTL. The vehicle was being driven in an erratic manner. Barnes assumed that the driver was intoxicated. The driver gave his name as Terrence Yarbrough but he had no identification. He was arrested for possession of drug

5

paraphernalia and "lack of identification." Barnes could not remember what Yarbrough looked like, but he did not believe that appellant was the same man.

Neither party offered any evidence as to the vehicle registration of the 1983 Pontiac or any transfers of title to the vehicle.

**Factual Sufficiency**

We shall first consider the factual sufficiency challenge to the conviction. In a factual sufficiency analysis, we view all the evidence without the prism of "in the light most favorable to the prosecution" as in a legal sufficiency challenge. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). A reviewing court must consider all the evidence impartially comparing evidence that tends to prove the existence of a disputed fact or facts with evidence that tends to disprove that fact or those facts. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Deference is given to the jury verdict, as well as the determinations involving the credibility and demeanor of the witnesses. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

A reviewing court must avoid substituting its own judgment for that of a fact finder. *Sells v. State*, 121 S.W.3d 748, 758 (Tex. Crim. App. 2003); *Westbrook v. State*, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Early on, it was held that the jury verdict is to be set aside "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*, 958 S.W.2d at 410; *Clewis*, 922 S.W.2d at 129.

6

In *Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000), the court expanded the *Clewis* standard of review in factual sufficiency cases to include both formulations from the civil law. There, the court stated:

[t]he complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Adoption of this complete standard allows us to remain true to one of the stated goals of *Clewis*, harmonization, when appropriate, of civil and criminal jurisprudence, and it recognizes the State's burden at a criminal trial is proof beyond a reasonable doubt.

*Id*. at 11.

Only recently, the Texas Court of Criminal Appeals acknowledged that the "evolution of factual sufficiency review since *Clewis* has been somewhat confusing." *Zuniga v. State*, ___ S.W.2d ___, No. 539-02, slip op. at 6 (Tex. Crim. App.—April 21, 2004). Concluding "that the burden of proof at trial necessarily affects appellate review of the evidence," *id*. slip op. at 7, the court sought to clarify the required review. It stated:

We will attempt to resolve some of the confusion created by the standard that has developed since *Clewis* by: 1) linking the burden of proof at trial to the standard of review and 2) avoiding language suggestive of a preponderance-of-the-evidence burden of proof. This does not alter the standards elucidated since *Clewis*, rather it serves only to synthesize the ideas each decision has provided and to acknowledge the necessity for appellate courts to consider the burden of proof at trial when reviewing the factual sufficiency of the evidence. There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral

7

light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. This standard acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.

*Id*. slip op. at 8.

Keeping *Zuniga* in mind, we turn to the instant case. Appellant did not challenge the legal sufficiency of the evidence. In a factual sufficiency review, there is a presumption that the evidence is legally sufficient to sustain the conviction. *Clewis*, 922 S.W.2d at 134. Appellant urges, however, that the evidence underlying the jury's verdict, when viewed in a neutral light, is so contrary to the weight of evidence as to be clearly wrong and unjust.

We need not reiterate the evidence. The State's case shows that the complaining witness Garcia and Officer Greenwalt both identified appellant as being at the scene of the burglary under circumstances earlier described. Greenwalt saw appellant leaving the burglarized house with items in his hands. He was present when appellant escaped from the scene in a car. It was shown without dispute that appellant had been using that particular car in the months prior to the burglary. Officer Preusse could not make an in-court identification of appellant but Preusse's description of the suspect who fled the scene of the burglary was not shown to be at odds with appellant's physical description; he was in the courtroom and testified.

8

Ruth Ann Easley testified as to appellant's declarations against penal interest and his stated knowledge of the location of the stolen property. Officer Wallace placed appellant in possession of the car in question on January 17, 2002.

To counter the State's evidence, appellant offered his own alibi testimony confirmed by Gwendolyn White. He denied the offense. Appellant's relatives testified, as had appellant, that he sold the 1983 Pontiac to Christopher Washington prior to the burglary. The dates of the sale varied. A nephew stated that Washington in turn sold the Pontiac to Terrence Yarbrough prior to the burglary. Appellant had Officer Barnes testify that three days after the burglary, Barnes stopped the particular Pontiac. It was being driven by a Terrence Yarbrough who had no identification. Appellant denied knowing Yarbrough. It is appellant's argument that "there was no physical evidence to tie appellant to the crime."

We have considered all the evidence in a neutral light. Giving deference to the jury's verdict and the determinations as to the credibility and demeanor of the witnesses, we conclude that there is no merit to appellant's claim that the evidence supporting the verdict was too weak to support the jury's finding of guilt beyond a reasonable doubt. Moreover, the evidence contrary to the verdict was not strong enough to defeat the beyond-a-reasonable doubt standard. The jury was rationally justified in finding guilt beyond a reasonable doubt. A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the prosecution. *Cain*, 958 S.W.2d at 410. The third point of error is overruled.

**Ineffective Assistance of Counsel**

In his second point of error, appellant complains that he was deprived of effective assistance of trial counsel. Appellant urges that his counsel was ineffective because he (1) failed to investigate the elements of appellant's defense; (2) failed to pursue fingerprint evidence lifted at the burglary scene; (3) failed to subpoena booking photographs of Washington and Yarbrough; (4) failed to seek funds to locate these two men; and (5) failed to obtain Home Depot records showing his purchases there for home repair on May 19, 2002. These complaints appear as assertions in appellant's brief and do not appear to be supported by the record before us.

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in a state criminal proceeding. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). In *Strickland v. Washington*, 466 U.S. 668, 689 (1984), the United States Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must show that (1) his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the results unreliable. *Strickland*, 466 U.S. at 687; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd). Under *Strickland*, a defendant has the burden to prove a claim of ineffective assistance of counsel by a

10

preponderance of the evidence.  *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996);

*Parmer*, 38 S.W.3d at 665.

The two-pronged standard for testing claims of ineffective assistance of counsel set

out in *Strickland* has been adopted for Texas constitutional claims.  *Hernandez v. State*, 726 S.W.2d

53, 57 (Tex. Crim. App. 1986).   Under the *Strickland-Hernandez* standard, any allegation of

ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate

the alleged ineffectiveness.  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Josey*

*v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.).  The assessment of whether a

defendant received effective assistance of counsel must be made according to the facts of each case.

*Lopez v. State*, 96 S.W.3d 406, 417 (Tex. App.—Austin 2002, pet. ref'd).  Whether the *Strickland*

test has been met is to be judged by the "totality of the representation" rather than by isolated acts

or omissions of trial counsel, and the test is applied at the time of the trial, not through hindsight.

*Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Banks*, 819 S.W.2d at 681.  Any

judicial review of a defendant's claim of ineffective assistance must be highly deferential to trial

counsel.  *Thompson*, 9 S.W.3d at 813.  There is a strong presumption that counsel's conduct fell

within the wide range of reasonable professional assistance.  *Id.*; *Jackson v. State*, 877 S.W.2d 768,

771 (Tex. Crim. App. 1994).

We do not speculate about trial counsel's strategy.  *Blevins v. State*, 18 S.W.3d 260,

271 (Tex. App.—Austin 2000, no pet.).  A reviewing court will not second guess through hindsight

the strategy of counsel at trial.  In the absence of direct evidence in the record of counsel's reasons

for the challenged conduct, an appellate court will assume a strategic motivation if any can be

11

imagined. *Garcia*, 57 S.W.3d at 441; *Skeen v. State*, 96 S.W.3d 567, 580 (Tex. App.—Texarkana 2002, no pet.). *Cf. Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999). The challenged conduct will not, under the circumstances, constitute deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 441; *Thompson*, 9 S.W.3d at 814.

Claims of ineffective assistance of trial counsel can be properly raised on appeal if the appellate record is sufficiently developed. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). In most cases, the trial record alone will be insufficient. *See Thompson*, 9 S.W.3d at 813. The record can be developed by a hearing on a motion for new trial based on a claim of ineffective assistance of counsel. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Appellant filed a motion for new trial alleging ineffective assistance of counsel, but it appears to have been overruled by operation of law. Appellant does not refer us to any portion of the record where evidence was adduced in support of his allegations of ineffective assistance of counsel. As appellant notes in his brief, a silent record does not require an appellate court to speculate on the reasons for counsel's decisions. *See Jackson*, 877 S.W.2d at 771.

We deem the record inadequate to make a fair evaluation of appellant's claim under *Strickland*. *See Blevins*, 18 S.W.3d at 271-72. The second point of error is overruled.

**In-Court Identification**

In his first point of error, appellant contends that the trial court erred in denying his pretrial motion to suppress evidence of Officer Greenwalt's in-court identification of appellant as

the identification was tainted by Greenwalt's suggestive pretrial viewing of a single police-booking photograph.

The trial court conducted a pretrial suppression hearing upon appellant's request. The only witness was Officer Jeffrey Greenwalt. His testimony was generally consistent with his later trial testimony. Greenwalt did state that upon his arrival at the burglary scene, he found a car parked in the driveway of the house. He called the dispatcher and gave a description of the car and its license plate number. The dispatcher responded that an Ivory Moore had been issued local traffic tickets while driving the particularly described automobile with the same license plate number. Greenwalt made a note of Moore's name and date of birth. Greenwalt explained that appellant fled the scene in the car. Two days later, Greenwalt was at Austin's main police station. He tapped into a "Dicats" computer, using appellant's name and date of birth, and received a digital photograph of Ivory Moore. Greenwalt immediately recognized the photograph as being the man he had observed at the burglary scene. The evidence indicates Greenwalt was acting alone. He was not shown a physical line up or a photographic array by another police officer. Before May 19, 2002, Greenwalt had had no contact with appellant.

At the suppression hearing, Greenwalt made an in-court identification, indicating appellant was the same person "in the photograph and at the house." Greenwalt stressed that he had had a good opportunity to see appellant at the scene of the burglary. At the conclusion of the hearing, the trial court denied the motion to suppress Greenwalt's in-court identification. The trial court, however, informed appellant's counsel that counsel would have to reurge his objection at trial

13

to any evidence offered of Greenwalt's viewing of the single photograph as supporting evidence of the in-court identification.

At trial, almost a year after the burglary, Greenwalt made a positive in-court identification of appellant on direct examination:

Q. Officer Greenwalt, do you feel like you got a really good look at him [at the scene]?

A. Absolutely.

. . .

Q. . . . Can you tell the jury how certain you are that the person sitting here is the same person you saw leaving that house?

A. One hundred percent.

Immediately thereafter, the trial court ruled that it was excluding any supporting evidence pertaining to Greenwalt's identification of appellant by a single photograph. Appellant's complaint is the denial of the motion to suppress. Therefore, we must first consider the law applicable to such motions.

**Motion to Suppress - Standard of Review**

In *Loserth v. State*, 963 S.W.2d 770, 771 (Tex. Crim. App. 1998), the Court noted that it had adopted a standard for review of a trial court's ruling on a motion to suppress evidence based on Fourth Amendment to the United States Constitution claims. *See Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). In *Loserth*, the court held that the *Guzman* standard was "applicable to a review of a trial court's ruling on a motion to suppress evidence based on a claim

14

that an in-court identification should not have been admitted due to taint by an impermissibly suggestive pretrial identification procedure in violation of the defendant's due process rights under the Fourteenth Amendment" to the United States Constitution. 963 S.W.2d at 771.

Under the *Guzman* standard, almost total deference is afforded to the trial court's determination of the facts, especially when the trial court's findings are based on an evaluation of credibility and demeanor. 955 S.W.2d at 89. The same amount of deference is given to mixed questions of law and fact if the resolution of those ultimate questions turn on an examination of credibility and demeanor of the witnesses. *Id.* If mixed questions of law and fact do not relate to credibility and demeanor, then the trial court's determinations are reviewed *de novo. Id.*

Whether a photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor. *Loserth*, 963 S.W.2d at 772-73. Accordingly, we will apply a *de novo* standard of review. *See Brown v. State*, 64 S.W.3d 94, 98 (Tex. App.—Austin 2001, no pet.).

In considering the scope of due process rights afforded a defendant with regard to the admission of identification evidence, a pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967); *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988); 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 14.31 (2d ed. 2001).

15

Determining the admissibility of an in-court identification involves a two-step analysis: (1) whether the out-of-court identification procedure was impermissibly suggestive, and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995); *Brown*, 64 S.W.3d at 99. Each case must be considered on its own facts and merits. *Simmons*, 390 U.S. at 384. Moreover, the analysis requires an examination of the totality of the circumstances. *Id.*; *Brown*, 64 S.W.3d at 99.

The defendant must prove the foregoing two elements by clear and convincing evidence. *Barley*, 906 S.W.2d at 133-34; *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993). If a defendant meets this heavy burden, then the in-court identification is inadmissible.[1] It must be remembered in a due process analysis that even if a pretrial procedure is suggestive, it does not mean it is impermissibly so. *Barley*, 906 S.W.2d at 33; *In re G.A.T.*, 16 S.W.3d 818, 827 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). If it is determined from the totality of the circumstances that no impermissibly suggestive procedure was utilized, then there is no need to

---

[1] Some Texas cases seem to indicate that where a defendant has sustained his burden under a due process claim, the inadmissibility of the in-court identification may be overcome by the State with clear and convincing evidence that the identification was of an independent origin. *See Baxton v. State*, 698 S.W.2d 212, 216 (Tex. Crim. App. 1985); *Bruton v. State*, 921 S.W.2d 531, 535 (Tex. App.—Fort Worth 1996, pet. ref'd); *Jiminez v. State*, 787 S.W.2d 516, 520 (Tex. App.—El Paso 1990, no pet.). "That analysis is properly used only when the pretrial procedure is tainted by a violation of the Sixth Amendment right to counsel." 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 14.39 (2d ed. 2001).

16

evaluate whether the procedure created a substantial likelihood of misidentification. *Barley*, 906 S.W.2d at 34; *In re G.A.T.*, 16 S.W.2d at 827. Even if the totality of the circumstances reveal an impermissibly suggestive pretrial procedure, there may be no substantial likelihood of misidentification. *Simmons*, 390 U.S. at 383; *Brown*, 64 S.W.3d at 99.

Reliability is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Loserth*, 963 S.W.2d at 772. In *Neil v. Biggers*, 409 U.S. 188 (1972), the court listed five nonexclusive factors to assess reliability. These factors are:

1. The opportunity of the witness to view the criminal at the scene of the crime;

2. The witness's degree of attention;

3. The accuracy of the witness's prior description of the criminal;

4. The level of certainty demonstrated at the confrontation; and

5. The length of time between the crime and the confrontation.

*Id*. at 199-20; *Loserth*, 963 S.W.2d at 772. These five factors are to be viewed in the light most favorable to the trial court's ruling. *Ibarra v. State*, 11 S.W.3d 189, 195-96 (Tex. Crim. App. 1999). The five factors, viewed in this manner, are then reviewed *de novo* against "the corrupting effect" of the suggestive pretrial identification procedure. *Id*.; *Loserth*, 963 S.W.2d at 773-74.

Assuming arguendo that the record is developed sufficiently to require application of the *Biggers* factors in order to determine the reliability of the identification, we turn to those factors. First, we must inquire whether Officer Greenwalt had an adequate opportunity to view the offender at the time of the crime. Greenwalt testified that he saw appellant outside the house on a

bright sunny day from a distance of ten feet, that appellant dropped items in his hands at Greenwalt's command, and ran to the nearby car. Greenwalt placed himself in front of the car with his pistol pointed at appellant whom he observed through the car's front windshield. Greenwalt remained in that position until appellant drove away in the car. Greenwalt estimated that he clearly observed appellant for ten to twenty-five seconds. This was Greenwalt's subjective interpretation of the time lapse. Greenwalt testified that he had an opportunity to clearly observe appellant at the scene.

Second, we must consider Greenwalt's degree of attention. Greenwalt was not a victim nor a casual observer, but a trained and experienced on-duty police officer who was investigating a burglary in progress. He had an incentive to pay attention. His detailed recollection or memory of the events may be regarded as reliable after-the-fact evidence of a high degree of attention. *See Delk*, 855 S.W.2d at 706-07; Dix, § 14.38. As an officer, Greenwalt knew that his claimed observations would be subjected later to close scrutiny and examination at any trial. *See Brathwaite*, 432 U.S. at 115. Greenwalt testified that he came face to face with appellant as appellant emerged from the house and diverted his attention from appellant only when appellant drove the car away.

Third, we examine the accuracy of Greenwalt's prior description of appellant. Appellant's counsel focused only on the description given in Greenwalt's offense report that the suspect was six feet tall, with an inch long Afro-style haircut, wearing glasses and a dark shirt. There was no showing that this was the only prior description given by Greenwalt. Appellant's concern is that the description was not as detailed as Officer Preusse's offense report which included gender and race. Except for the glasses, there were no inconsistencies between the reports. No claim has

18

been advanced that appellant did not possess the physical characteristics described. Similarities between the description given and accused's appearance suggests the absence of any influence on the part of the witness. Dix, § 14.38. Greenwalt's offense report description appears meager, but the report was not introduced into evidence. We fail to find this *Biggers* factor controlling.

Fourth, we examine the level of certainty by the witness at the time of the pretrial procedure or confrontation. Here, Greenwalt was alone at the time that he obtained appellant's photograph from the computer. Greenwalt testified at the suppression hearing that he immediately recognized appellant's photograph as being the man that he had seen at the burglary scene. He repeated this assurance several times during his testimony. There is no evidence that his identification based on the photograph was tentative. Neither the computer-generated photograph nor a replica were introduced into evidence to discredit Greenwalt.

Fifth, we assess the length of time between the crime and the confrontation which was two days. We conclude that this period of time had no determinative effect on the accuracy or inconsistency of Greenwalt's identification. Reliability is not effected by this particular interval.

In general, identification arising from a single photographic display may be viewed with suspicion. *See Simmons*, 390 U.S. at 383. However, the foregoing indicators of Greenwalt's ability to make an accurate identification are hardly outweighed by the corrupting effect of the challenged identification. There was little pressure or urgency on Greenwalt to make an identification from the photograph. There was no other person present to coerce or urge Greenwalt to make a hasty decision.

19

Viewing the facts of this case in the light most favorable to the trial court's ruling, we conclude from the totality of circumstances that the *Biggers* factors were sufficiently met. The trial court did not err in overruling the motion to suppress the in-court identification. The first point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Kidd, Pemberton and Onion[*]

Affirmed

Filed: May 27, 2004

Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).