# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00023-CV

**Harold Davis, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 198,616-B, HONORABLE RICK MORRIS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Harold Davis appeals the district court's judgment terminating his parent-child relationship with his son B.L.K. He raises a single issue contending that he was denied the effective assistance of counsel. *See In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (right to effective assistance of counsel in parental-rights termination proceeding). Because the record properly before this Court does not support Davis's claim, we affirm the district court's judgment.

**Background**

B.L.K. tested positive for cocaine and marihuana at birth, and his mother admitted to nurses that she had frequently used drugs during her pregnancy. The Texas Department of Family and Protective Services (the Department) was appointed temporary managing conservator of B.L.K. on June 25, 2003, and he was placed in foster care when he was two days old. Davis was not

identified as B.L.K.'s father for some time after the Department became involved in the case. He was first alleged as B.L.K.'s biological father in the Department's second amended petition, filed on November 14, 2003, listing his address as the Bell County Jail. However, Davis was not served with the Department's petition until March 2004. Davis filed a denial of paternity and was ordered to submit to paternity testing no later than May 27, 2004. Davis did not appear at the May 27 status hearing and did not submit to testing as ordered. He was convicted of possession of cocaine on July 18 and sentenced to five years in prison. A blood sample was collected from Davis on September 9, 2004, just before he was sent to the Texas Department of Criminal Justice Dawson Unit. On September 30, 2004, attorney Billy Ray Hall was appointed to represent Davis in the termination proceeding after DNA testing identified Davis as B.L.K.'s biological father.[1] A final hearing on the termination of Davis's parental rights was set for December 14.

At the outset of the hearing on December 14, Hall asked the associate judge for a continuance, explaining that he had yet to confer with his client. Hall told the court that he had sent correspondence to Davis at the Dawson Unit, but Davis had not responded. Hall attempted to contact Davis by phone but was informed by the warden's office that the phone system for attorney-client interviews was inoperable and that he would have to interview his client in person. Hall declined to travel to the Dawson Unit to visit with Davis before the hearing. The associate judge denied the continuance and proceeded with a brief final hearing. The Department's only witness was its caseworker Cheryl Parker, who testified about the circumstances of B.L.K.'s removal from his

---

[1] B.L.K.'s mother's parental rights were terminated on September 30, 2004.

mother and B.L.K.'s satisfactory placement with foster parents. She testified that B.L.K. had bonded with the foster parents and that they wished to adopt him.

Parker described her limited conversation with Davis. She recounted that Davis once told her that "he wanted his child if he was found to be the dad." However, she opined that Davis could not properly meet the needs of his child and that the termination of his parental rights was in B.L.K.'s best interest. Records reflecting Davis's conviction for possession of cocaine and five-year sentence were also admitted into evidence. Although Hall cross-examined Parker, Hall presented no evidence on Davis's behalf, and his sole argument in opposition to termination was the fact that he had not yet conferred with his client. The associate judge recommended that Davis's parental rights be terminated, and the district court's decree of termination was signed that day.

**Affidavit of Billy Ray Hall**

Before addressing the merits of Davis's issue, we must decide whether we may properly consider facts contained in an affidavit attached to Davis's appellate brief. Davis has attached an affidavit from Hall, which describes Hall's contacts with his client. In the affidavit, Hall states that he first spoke with Davis on January 3, 2005, after the hearing but before the district court's plenary jurisdiction had expired.[2] After asking to think overnight about his options, Davis told Hall on the following day that he did not wish to contest the termination of his parental rights. Hall proceeded according to his client's wishes, informed the Department of Davis's decision, and

---

[2] Hall's affidavit does not discuss the full contents of his conversation with Davis but makes it clear that he informed Davis about his paternity and the termination of his parental rights.

3

sent Davis an affidavit to sign stating that he did not wish to pursue an appeal. Hall then states in his affidavit that all of his correspondence to Davis had been sent to the wrong address:

> On February 5, 2005, it was discovered that the correspondence address we had on file for Mr. Davis was not correct and the Post Office Box address we were given for the Dawson Unit had two number digits transposed. None of the previous correspondence we had sent had been returned to us by the postal service, so we were not aware that the address was wrong.

Hall explains that a copy of a motion to dismiss the appeal and an affidavit for Davis to sign was sent to the correct address on the day the mistake was discovered. Hall received a letter from Davis on February 22 informing Hall that Davis "[was] not willing to give up parental rights to his child . . . he only found out the child was his biological son in January 2005 after receiving the results from a DNA paternity test, and that he [would] not abandon his responsibility for his child."

We cannot consider evidence attached to briefs that does not also appear in the appellate record. *See Sabine Offshore Servs. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979); *Beck v. Walker*, 154 S.W.3d 895, 899 (Tex. App.—Dallas 2005, no pet.); *Carlisle v. Phillip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex. App.—Austin 1991, writ denied). Davis had an opportunity to introduce additional facts into the record through a motion for new trial. The docket reflects that Davis's motion for new trial was passed by Davis's appellate counsel on January 13, nine days after Davis had informed Hall that he did not wish to pursue an appeal. Having now changed his mind, Davis cannot introduce new evidence on appeal after he waived his opportunity to develop the record through a motion for new trial. Accordingly, we may not consider Hall's affidavit in our determination of whether Davis was denied the effective assistance of counsel.

4

**Ineffective Assistance of Counsel**

The Texas Supreme Court has held that the statutory right to counsel in a parental-rights termination proceeding includes a guarantee that counsel will perform effectively. *See In re M.S.*, 115 S.W.3d at 544. The court adopted the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), for considering claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*See In re M.S.*, 115 S.W.3d at 545. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Davis does not argue his ineffective assistance of counsel claim under the *Strickland* standard. Rather, he contends that Hall's failure to communicate with him before the hearing amounted to a constructive denial of counsel from which we must presume prejudice. In an opinion released on the same day as *Strickland*, the United States Supreme Court held that prejudice must be presumed where circumstances exist that make it "unlikely that the defendant could have received the effective assistance of counsel." *United States v. Cronic*, 466 U.S. 648, 666 (1985); *see also Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (prejudice presumed where lawyer slept

during portions of trial). In *Cronic*, the court cited *Powell v. Alabama*, 287 U.S. 45 (1932), where counsel in a highly charged capital murder prosecution was appointed on the day of trial, as an example of the sort of circumstances in which prejudice is presumed. *Cronic*, 466 U.S. at 660.[3] *But see Avery v. Alabama*, 308 U.S. 444 (1940) (prejudice not presumed where counsel appointed three days before capital murder trial).

The record properly before us in this case indicates that Hall was appointed seventy-five days before trial. Although Hall announced that he was not ready for trial, his cross-examination of the Department's only witness demonstrates that he was familiar with the Department's evidence. Hall informed the trial court that he had sent correspondence to Davis and that Davis had not replied. There is no evidence properly before us that Davis did not receive Hall's correspondence or that Davis was otherwise prevented from contacting his attorney. The record equally supports the conclusion that Davis was not interested in defending his parental rights and simply ignored the letters from Hall. Because Hall was appointed well before the final hearing and was familiar with the case, we hold that the circumstances of Hall's representation of Davis do not make it unlikely that he could have received the effective assistance of counsel. *See Cronic*, 466 U.S. at 666. Accordingly, we will evaluate Davis's claim under the *Strickland* standard.

Even assuming without deciding that Hall's failure to confer with Davis until after the hearing was deficient performance under *Strickland*, Davis must make the requisite showing of

---

[3] In *Cronic*, the United States Supreme Court did not presume prejudice where an inexperienced real estate lawyer was appointed only twenty-five days before trial to represent a criminal defendant in a complex financial fraud prosecution. *See United States v. Cronic*, 466 U.S. 648, 649 (1984).

prejudice. Allegations of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallet v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). The trial record alone will ordinarily be insufficient to support a claim of ineffective assistance of counsel, and the record must be developed through a motion for new trial.[4] *See Moore v. State*, 140 S.W.3d 720, 728 (Tex. App.—Austin 2004, pet. ref'd).

Here, it is undisputed that Davis has had no contact with his son, having learned he had a son only after he was incarcerated. The trial court specifically found that Davis (1) engaged in conduct that endangered B.L.K.'s physical and emotional well-being; (2) voluntarily, and with knowledge of the pregnancy, abandoned B.L.K.'s mother and failed to provide support or medical care; (3) failed to support the child since birth; and (4) knowingly engaged in criminal conduct resulting in his conviction, confinement, and inability to care for the child for a period of over two years from the filing of the Department's petition. The record indicates that Davis did not regularly appear at hearings in the case and only once expressed any interest in taking responsibility for B.L.K. prior to filing this appeal. Although incarceration alone does not justify termination, B.L.K.'s mother's parental rights were terminated prior to the hearing and Davis has not even alleged how he would provide or arrange to provide care for B.L.K while he is in prison. *See In re Caballero*, 53 S.W.3d 391, 395 (Tex. App.—Amarillo 2001, pet. denied). The record does not demonstrate that the outcome of the termination proceeding would have been different had he conferred with counsel

---

[4] Although Hall filed a motion for new trial raising the fact that he had yet to confer with Davis, the motion was passed.

7

prior to the hearing.  *See Strickland*, 466 U.S. at 694; *In re M.S.*, 115 S.W.3d at 545.  We overrule Davis's claim of ineffective assistance of counsel.

**Conclusion**

Having overruled Davis's only issue, we affirm the district court's judgment terminating Davis's parental rights to B.L.K.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   November 3, 2005