TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00094-CR






Collin Smith, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT

NO. D-1-DC-05-500237, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted Collin Smith of the offense of murder. See Tex. Penal Code Ann.
§ 19.02(b)(1) (West 2003). The jury assessed punishment at 52 years' imprisonment and a $5,000
fine. In two points of error, Smith asserts that (1) the district court erred in denying his motion to
suppress a pretrial photographic identification of Smith as the perpetrator, and (2) the judgment
should be modified to reflect that the trial court, rather than the jury, made a finding that a firearm
was used during the commission of the offense. We will affirm the judgment.


BACKGROUND

 The underlying facts of this case are undisputed on appeal. The jury heard evidence
that on the evening of April 18, 2005, Smith and several other individuals met at the home of
Michael Mendez to complete a drug transaction. The alleged participants were Smith, Mendez,
Kermit Maxwell, Timothy Chapa, Ruben Gonzales, Robert Leal, and Valentin Ramirez. Mendez
testified that he arranged for Smith and Maxwell to purchase a kilo of cocaine supplied by Ramirez
for $16,000. According to Mendez, after Ramirez showed the cocaine to Smith and Maxwell, and
while Ramirez and Gonzales were counting the money, Smith and Maxwell pulled out firearms. 
Violence ensued, and Ramirez, Gonzales, and Leal were shot. Mendez testified that Smith then
grabbed the cocaine and cash and fled the scene with Maxwell. Gonzales and Leal survived their
injuries. Ramirez, however, died from a gunshot wound to his chest.

 During the police investigation of the homicide, Gonzales, Mendez, and Leal were
each shown a photographic array of six individuals and asked to identify which one of the
individuals, if any, was the assailant. Each of the men identified Smith in the array. In a separate
photo array, the men also identified Maxwell.

 The State charged both Smith and Maxwell with Ramirez's murder. The State
alleged that Smith was the shooter and that Maxwell was a party to the offense. The two
defendants were tried separately. In Maxwell's trial, the jury found him guilty of murder. This
Court affirmed Maxwell's conviction on appeal. See Maxwell v. State, No. 03-06-00473-CR,
2007 Tex. App. LEXIS 6356 (Tex. App.--Austin Aug. 6, 2007, pet. dism'd). In Smith's trial, the
jury likewise found that defendant guilty of murder. During sentencing, Smith pleaded true to
enhancement paragraphs alleging prior drug convictions. The jury assessed punishment at 52 years'
imprisonment. The written judgment of conviction reflected an affirmative finding that Smith used
a deadly weapon, a firearm, in the commission of the offense. This appeal followed.



DISCUSSION

Motion to suppress

 In his first point of error, Smith asserts that the district court erred in denying his
motion to suppress the pretrial photographic identification of Smith by witnesses Gonzales, Mendez,
and Leal. Smith claims that the photo array was "impermissibly suggestive" because he was the only
individual in the lineup with his head "cocked to the side and his eyes directed off-center." 
Additionally, according to Smith, because the police "did not change the order of the photos in the
array from one witness to the next," the witnesses had "the opportunity to communicate with each
other about the array." Smith contends that these "faulty procedures" violated his due process rights. 
See U.S. Const. amend. V, XIV. Smith further contends that all subsequent evidence obtained
against him should be suppressed as "poisoned fruit" of the improper identification. (1)

 The Guzman standard of review applies to a trial court's ruling on a motion
to suppress evidence based on a claim that an impermissibly suggestive pretrial
identification procedure violated the defendant's due process rights. See Loserth v. State,
963 S.W.2d 770, 771 (Tex. Crim. App. 1998) (citing Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997)); Moore v. State, 140 S.W.3d 720, 729-30 (Tex. App.--Austin 2004,
pet. ref'd). Under the Guzman standard, almost total deference is afforded to the trial court's
determination of the facts, especially when the trial court's findings are based on an evaluation of
credibility and demeanor. Moore, 140 S.W.3d at 730. The same amount of deference is given to
mixed questions of law and fact if the resolution of those ultimate questions turns on an examination
of credibility and demeanor of the witnesses. Id. However, if mixed questions of law and fact do
not relate to credibility and demeanor, then the trial court's determinations are reviewed de novo. 
Id. Whether a photographic identification was so impermissibly suggestive as to give rise to a very
substantial likelihood of misidentification is a mixed question of law and fact that does not turn on
an evaluation of credibility and demeanor. Loserth, 963 S.W.2d at 773; Moore, 140 S.W.3d at
730; Brown v. State, 64 S.W.3d 94, 98 (Tex. App.--Austin 2001, no pet.). Accordingly, we apply
a de novo standard of review. See Moore, 140 S.W.3d at 730.

 In considering the scope of due process rights afforded a defendant with regard to the
admission of identification evidence, a pretrial identification procedure may be so suggestive and
conducive to mistaken identification that subsequent use of that identification at trial would deny the
accused due process of law. Stovall v. Denno, 388 U.S. 293, 301-02 (1967). Determining the
admissibility of an in-court identification involves a two-step analysis: (1) whether the out-of-court
identification procedure was impermissibly suggestive, and (2) whether that suggestive procedure
gave rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States,
390 U.S. 377, 384 (1968); Barley v. State, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995); Brown,
64 S.W.3d at 99. Each case must be considered on its own facts and merits. Simmons, 390 U.S.
at 384. Moreover, the analysis requires an examination of the totality of the circumstances. Id.;
Brown, 64 S.W.3d at 99.

 The defendant must prove the foregoing two elements by clear and convincing
evidence. Barley, 906 S.W.2d at 33-34; Moore, 140 S.W.3d at 730. If a defendant meets this "heavy
burden," then the in-court identification is inadmissible. Moore, 140 S.W.3d at 730. It must be
remembered in a due process analysis that even if a pretrial procedure is suggestive, it does not mean
it is impermissibly so. Barley, 906 S.W.2d at 33; Moore, 140 S.W.3d at 730. If it is determined
from the totality of the circumstances that no impermissibly suggestive procedure was utilized,
then there is no need to evaluate whether the procedure created a substantial likelihood of
misidentification. Barley, 906 S.W.2d at 34; Moore, 140 S.W.3d at 730-31. Conversely, even if the
totality of the circumstances reveal an impermissibly suggestive pretrial procedure, there may be no
substantial likelihood of misidentification. Simmons, 390 U.S. at 383; Brown, 64 S.W.3d at 99.

 In this case, the "impermissibly suggestive" element is dispositive. The court of
criminal appeals has explained:


Suggestiveness may be created by the manner in which the pre-trial identification
procedure is conducted, for example by police pointing out the suspect or suggesting
that a suspect is included in the line-up or photo array. Or it may also be created by
the content of the line-up or photo array itself if the suspect is the only individual
closely resembling the pre-procedure description. Furthermore, an individual
procedure may be suggestive or the cumulative effect of the procedures may be
suggestive.


Barley, 906 S.W.2d at 33 (internal citations omitted). Furthermore, "a lineup is considered
unduly suggestive if other participants are greatly dissimilar in appearance from the suspect." 
Withers v. State, 902 S.W.2d 122, 125 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd)
(citing United States v. Wade, 388 U.S. 218, 232-33 (1967)). For example, a suspect may be greatly
dissimilar in appearance from the other participants because of his distinctly different appearance,
race, hair color, height, or age. See id. (citing Foster v. California, 394 U.S. 440, 442-43 (1969)). 
However, minor discrepancies between individuals in the array will not render the lineup
impermissibly suggestive. See McClenton v. State, 167 S.W.3d 86, 96 (Tex. App.--Waco 2005,
no pet.). Neither due process nor common sense requires that the individuals in a lineup exhibit
features exactly matching the accused. Colgin v. State, 132 S.W.3d 526, 532 (Tex. App.--Houston
[1st Dist.] 2004, pet. ref'd) (citing Turner v. State, 600 S.W.2d 927, 933 (Tex. Crim. App. 1980)). 
Rather, a photo array must contain individuals who fit a rough description of the suspect. Wilson
v. State, 15 S.W.3d 544, 553 (Tex. App.--Dallas 1999, pet. ref'd).

 Turning to the facts of this case, the only witness to testify at the hearing on the
motion to suppress was Detective William Poole of the Travis County Sheriff's Office, the detective
who conducted the photo lineups. The lineups were also admitted into evidence. Detective Poole
testified that each witness was shown a copy of the array at separate times; Gonzales and Leal were
shown the array in their hospital rooms on April 21 and 22, 2005, respectively, while Mendez was
shown the array at Poole's office on April 21. None of the witnesses were together when they were
shown the arrays. Poole testified that he was the only law enforcement agent present during each
identification. According to Poole, the only other individuals present were, in the case of Gonzales,
nursing staff and Gonzales's mother; in the case of Mendez, Mendez's spouse; and, in the case of
Leal, nursing staff. Prior to showing the witnesses the array, Poole explained to the witnesses that
he "had a photo array of six individuals. If the second individual that we were trying to identify was
one of those, for him to specify and point that individual out. If he did not observe that individual
amongst the six, then to advise me of such." Poole testified that he did not suggest to the witnesses
which photo they should select. According to Poole, each witness, when the witness identified
Smith in the fifth photograph on the array, did so by "point[ing] to the exact picture." Poole then
requested that each witness initial the photo. Mendez and Leal did so, but Gonzales did not, out of
"fear of retaliation." Therefore, Poole initialed the photo that Gonzales identified. Poole testified
that he showed each witness "[a] clean copy of the exact same photo array" that did not include the
initials of the other witnesses.

 On cross-examination, Detective Poole agreed with Smith that the individual in the
fifth photograph was "the only one who had his head turned slightly to the left." However, Poole
testified that the individual in the fifth photograph (Smith) "seem[ed] to have similar eye position"
as the individual in the fourth photograph. Poole testified that he did not show the witnesses any
arrays that had neither Smith nor Maxwell in them, and he did not "change the position that
Mr. Smith was to be found in from one photo lineup spread to the next." Also, Poole "could not be
sure" whether the witnesses were still having contact with one another during the period in which
Poole was conducting the lineups.

 At the conclusion of the hearing, the district court denied Smith's motion to suppress
the identification:


At this time, after considering the evidence of the detective, as well as the photo
lineups themselves, State's Exhibits Nos. 1, 2 and 3, the court finds that all three
photo lineups were proper and not impermissibly suggestive, and that they were
presented properly, based on the evidence I heard. The court will deny the defense's
motion to suppress identification.


 On this record, we conclude that the district court did not err in its ruling. Although
Smith appears to be the only individual in the array with his head turned slightly to the left and his
eyes directed downward, the other individuals in the lineup are not "greatly dissimilar in appearance
from the suspect." See Withers, 902 S.W.2d at 125. In fact, they each "fit a rough description of the
suspect." See Wilson, 15 S.W.3d at 553. All six individuals in the array are young black males with
similar facial features, hair length, and facial hair.

 Moreover, there is nothing in the record to demonstrate that the pretrial identification
was impermissibly suggestive because of the manner in which the procedure was conducted. 
See Barley, 906 S.W.2d at 33. Poole testified that, prior to the identifications, he did not point
out the suspect or suggest in any way that the suspect was included in the array. See Barley,
906 S.W.2d at 33. In fact, Poole told the witnesses to advise him that the individual was not in the
lineup if they could not identify the individual. And, Poole testified that he showed each witness a
"clean copy" of the array without the initials of the other witnesses. As for Smith's contentions that
Detective Poole should have used arrays that did not include Smith, and changed the order of the
photographs in the array to prevent the witnesses from communicating with each other about the
array, Smith cites to no authority that requires such procedures, nor are we aware of any.

 On this record, we find that Smith has not proven by clear and convincing evidence
that the pretrial identification procedure was impermissibly suggestive. We overrule Smith's first
point of error.

Deadly weapon finding

 In his second point of error, Smith asserts that there is error in the written judgment
of conviction. Specifically, Smith contends that the judgment reflects a jury finding that a firearm
was used in the commission of the offense, but, according to Smith, the "jury's verdict included no
such finding."

 We disagree. The indictment alleged that Smith used a firearm in the commission
of the offense. The court's charge tracked the language of the indictment and instructed the jury to
find the defendant guilty if it believed from the evidence beyond a reasonable doubt that Smith
"intentionally or knowingly cause[d] the death of an individual, namely, Valentin Ramirez,
by shooting Valentin Ramirez with a firearm." (Emphasis added). A firearm is a deadly weapon
per se. See Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2007). Accordingly, the jury, by
its verdict of guilty, necessarily made an affirmative finding that a deadly weapon,
specifically a firearm, was used in the commission of the offense. See Polk v. State, 693 S.W.2d
391, 394 (Tex. Crim. App. 1985) (holding that deadly weapon finding arises "as a matter of law" if
"the trier of fact finds that a [firearm] has been used in the commission of the offense . . . since a
[firearm] is a deadly weapon per se.") Thus, the written judgment of conviction correctly reflects
the jury's finding.

 We overrule Smith's second point of error.





CONCLUSION

 Having overruled Smith's points of error, we affirm the judgment of the district court.



 ____________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: May 22, 2008

Do Not Publish
1. Although the State acknowledges that Smith's "objections during the pretrial hearing on
the motion to suppress identification and the trial court's adverse ruling on that motion were
sufficient to preserve any alleged error for review on the grounds voiced at the pretrial hearing,"
it argues that Smith has waived this complaint by not raising it on appeal. Instead, the
State contends, Smith makes only his "fruit of the poisonous tree" argument, and adds that he did
not raise that argument below. Because we conclude below that the district court did not err in
finding that the photo lineup was proper and not impermissibly suggestive, and this is decisive of
both arguments, we need not address the State's waiver arguments. See Wong Sun v. United States,
371 U.S. 471, 488 (1963) (establishing that "fruit of the poisonous tree" doctrine applies to "illegal"
police activity). We similarly need not address the State's contention that Smith waived error
through his subsequent testimony at Maxwell's trial.