COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-387-CR

 

 

KENNETH
LEON MENDIOLA                                                   APPELLANT

 

                                                      V.

 

THE
STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

         FROM CRIMINAL DISTRICT
COURT NO. 3 OF TARRANT COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------








A jury convicted Appellant Kenneth Leon Mendiola
of aggravated robbery with a deadly weapon and assessed his punishment at
twenty-five years= confinement in the
Institutional Division of the Texas Department of Criminal Justice.  The trial court sentenced him
accordingly.  Appellant brings a single
point on appeal, arguing that the trial court reversibly erred by failing to
suppress the complainant=s in-court identification of
Appellant because it was tainted by an improperly suggestive identification
procedure.  Although the pretrial
photograph array was impermissibly suggestive because Appellant=s
photograph was both larger and darker than the other photographs in the array,
thereby calling attention to his photograph, the array did not give rise to a
substantial likelihood of misidentification. 
We therefore affirm the trial court=s
judgment.  

On December 13, 2005, Dors Ward, Jr., the owner
of D. Ward Construction Company, drove to an apartment complex to meet with
Rick Spires, a man he knew from a Bible study, to talk about remodeling an
apartment.  Appellant accompanied Spires
to the meeting.

When Ward arrived at the apartments, he got out
of his pickup truck and then turned back toward the truck to get his
briefcase.  Spires placed a knife to Ward=s
throat.  Appellant stabbed Ward under his
right ear, causing only a superficial wound. 
Appellant and Spires then forced Ward to get in his truck and drive from
one bank ATM to another, withdrawing money out of his account.  During this time, Spires and Appellant each
held a serrated kitchen knife, five or six inches long, on Ward.








After Ward had depleted his account, Spires and
Appellant forced him to drive his truck back to the apartment complex where he
had first met them. Spires got his truck and ordered Ward to follow him into an
empty parking lot in a warehouse district. 
At the parking lot, Spires stopped, got into Ward=s truck,
told Appellant to Afinish the job,@ and
went back to his truck to wait. Appellant then stabbed Ward in the neck.  Ward and Appellant struggled, and Ward
managed to fight off Appellant; during the struggle, Ward=s hands
and arms were cut and his lung was punctured. 
Appellant then ran over to Spires=s truck,
and he and Spires drove away.

Ward put his fingers on his wounds to stop the
bleeding as much as possible and drove away. 
He ultimately crashed his truck into the sidewalk of a car
dealership.  Justin Wayne Stringer, a
salesman working at the dealership, approached the truck after seeing Ward
crash.  Stringer, who had had EMT
training, testified that Ward appeared to have a serious injury to a major
artery in his neck and several stab wounds to the chest.  Another witness called 911.  Ward was taken to the hospital and remained
hospitalized for six days; he was later hospitalized again because of internal
bleeding.

The day after the robbery, Detective Lopez talked
with Ward and obtained descriptions of Spires and Appellant.  One week after the robbery, Ward was asked to
view two photo spreads.  He identified
Appellant from one photo spread and Spires from the second photo spread.








In his sole point, Appellant argues that the
trial court erred by failing to suppress the complainant=s
in-court identification of him because it was tainted by an improperly
suggestive identification procedure.  The
Texas Court of Criminal Appeals has instructed us that 

[i]n considering the scope of
due process rights afforded a defendant with regard to the admission of
identification evidence, the United States Supreme Court has held that a pre‑trial
identification procedure may be so suggestive and conducive to mistaken
identification that subsequent use of that identification at trial would deny
the accused due process of law.  Hence,
the Court formulated a two step analysis to determine the admissibility of an
in‑court identification:  1)
whether the out‑of‑court identification procedure was impermissibly
suggestive; and 2) whether that suggestive procedure gave rise to a very
substantial likelihood of irreparable misidentification.  An analysis under these steps requires an
examination of the Atotality of the circumstances@
surrounding the particular case and a determination of the reliability of the
identification.[1]








The burden is upon the party challenging the
identification to prove each prong by clear and convincing evidence.[2]  If the first prong of this test is not met,
we do not address the second prong to evaluate the likelihood of irreparable
misidentification.[3]  If, however, we determine that the
identification procedure was impermissibly suggestive, we must still determine
whether such suggestive pretrial procedure gave rise to a substantial
likelihood of irreparable misidentification.[4]

We have examined the photo spread complained of
by Appellant and note that the photograph of Appellant is both larger and
darker than the other photographs. 
Additionally, it fills more of the space provided for the photograph
than do the others.  The eye of one who
knows nothing about the case is immediately drawn to the photograph of
Appellant because it is so distinctive in relation to the remaining
photographs.  We therefore hold that the
out-of-court identification procedure was impermissibly suggestive.[5]








We therefore must determine whether the
suggestive procedure gave rise to a very substantial likelihood of irreparable
misidentification.[6]  Ward testified that he met with Appellant on
two occasions.  The first occasion was
approximately a week before the stabbing. 
He was with Appellant for an hour or slightly less.  They were evaluating the damage done to the
apartment complex to determine remodeling costs.  Ward testified that he did not remember Appellant=s name,
just his face.  He also testified that he
had not been sure that he wanted Appellant to work on the job because he looked
like he was on drugs.

Ward saw Appellant again on the day of the
stabbing.  They met around 5:30 p.m. at
the apartments.  He testified that he
spent a little over two hours with Appellant and Rick Spires.  When asked to clarify his testimony that he
had spent a little over two hours with the two men, Ward testified, AIt was
right afterCafter it got dark, and it was
all over with.  It was approximately two
hours= worth.@  He identified Appellant as Athe one
that did the stabbing. . . [, t]he most stabbing.@  He also testified that he was 100% sure that
the person sitting next to defense counsel was the person who stabbed him.

Considering the totality of the circumstances,
including the opportunity Ward had to observe Appellant on the two separate
days, we hold that Appellant has failed to satisfy the second prong of the
test; that is, we hold that the suggestive procedure did not give rise to a
very substantial likelihood of irreparable misidentificationCWard had
ample opportunity to observe Appellant and was unequivocal in his
identification at trial.

 








We therefore overrule Appellant=s sole
point and affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  October 9, 2008











[1]Barley v. State, 906 S.W.2d 27, 32B33 (Tex. Crim. App. 1995)
(citations and footnotes omitted), cert. denied, 516 U.S. 1176 (1996).





[2]Goldberg v. State, 95 S.W.3d 345, 378
(Tex. App.CHouston [1st Dist.] 2002,
pet. ref=d), cert. denied, 540
U.S. 1190 (2004).





[3]Barley, 906 S.W.2d at 34.





[4]Moore v. State, 140 S.W.3d 720, 731
(Tex. App.CAustin 2004, pet. ref=d) (citing Simmons v. United
States, 390 U.S. 377, 383, 88 S. Ct. 967, 971 (1968), and Brown v. State,
64 S.W.3d 94, 99 (Tex. App.CAustin 2001, no pet.)).





[5]See United States v.
Merkt,
794 F.2d 950, 958 (5th Cir. 1986), cert. denied, 480 U.S. 946 (1987); Barley,
906 S.W.2d at 33B34.





[6]See Simmons, 390 U.S. at 384, 88 S.
Ct. at 971.