NO. 07-05-0006-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 11, 2007
_____

GARY DECKER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 04-04-5708; HONORABLE HAROLD PHELAN, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Gary Decker was convicted of sexual assault and, on direct appeal, challenges the resulting jury-assessed punishment of 15 years in the Texas Department of Criminal Justice Institutional Division. We will affirm.

Appellant raises a single point of error contending he received ineffective assistance of counsel during the punishment phase of his trial. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-pronged test to be used when analyzing a claim of ineffective assistance of counsel. In order to obtain a reversal on the grounds

of ineffective assistance of counsel, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced appellant. *Id*. at 687, 691. The Texas Court of Criminal Appeals adopted this test for criminal cases in *Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App. 1986).

To satisfy the first prong of the *Strickland* test, appellant must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 468 U.S. at 687. He must demonstrate that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *Id*. at 689, 690. Appellant bears the burden of proving ineffective assistance, and our review of counsel's performance must be highly deferential. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex.Crim.App. 2005); *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome the presumption. *Andrews*, 159 S.W.3d at 101; *Bone*, 77 S.W.3d at 833.

The adequacy of defense counsel's assistance is based upon the totality of the representation rather than by isolated acts or omissions of trial counsel. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999). Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel whose competency or accuracy of representation is to be judged by hindsight.

*Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003); *Bone*, 77 S.W.3d at 833; *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex.Crim.App. 1993); *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984).

To defeat a presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly rooted in the record. *Thompson*, 9 S.W.3d at 813-14; *Tabora v. State*, 14 S.W.3d 332, 336 (Tex.App.–Houston [14th Dist.] 2000, no pet.). The record on direct appeal is, in almost all cases, inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance and the better course is to pursue the claim in habeas proceedings. *Bone*, 77 S.W.3d at 833*; Moore v. State*, 140 S.W.3d 720, 728 (Tex.App.–Austin 2004, pet. ref'd). Absent evidence of counsel's reasons for the challenged conduct, we will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001).

In his brief, appellant directs our attention to seven instances of alleged ineffective assistance of counsel during the punishment phase of his trial. For purposes of our discussion, we divide the seven instances into three categories: (1) trial counsel's failure to object; (2) trial counsel's failure to engage in further jury argument; and (3) trial counsel's comments during closing argument.

Failure to Object

Three of appellant's complaints revolve around trial counsel's purported failure to object. He first complains of his counsel's failure to object to two statements within the following section of the prosecutor's argument on punishment:

First of all, the fine, don't spend a lot of time on it. Just don't spend a lot of time on it. *If the Defendant is sentenced to the penitentiary, he never pays a penny of the fine. If he is placed on probation, he may, over a period of time, pay part or all of that probation– of that fine; but, it just goes in the general coffers. It doesn't go to recompense the victim or anything like that.* So, a fine looks good. A fine sounds good. It's window dressing, but it's really not that important. So, don't waste a lot of time on it.

No. 2, quite often I hear from jurors that they think that what they would like to do is to figure out some way to send someone to the penitentiary for some shorter period of time and then place them on a long probation with the idea that we know that we have got their attention and maybe they can make a productive citizen over a period of time.

*The law doesn't allow that. Okay? That just isn't one of your options.* The options– your decision must be on that list between probation and 20 years in the penitentiary.

(emphasis added by appellant).

4

In particular, appellant complains "[t]rial counsel failed to object to the prosecutor's misstatements of the law and argument outside the record when he discussed the subject of fine, whether Appellant would ever pay a fine assessed by the jury and to where or whom the fine money may be allocated." Appellant argues that the prosecutor's statements left the jury with the impression appellant could ignore the payment of a fine if granted probation and misguided the jury with regard to their sentencing options.

We cannot agree counsel's failure to object to the prosecutor's statements concerning payment of fines is evidence of deficient performance. To begin with, the statements were not necessarily detrimental to appellant. As his brief and the record makes clear, appellant's goal was to secure from the jury a recommendation of probation. The prosecutor's statement that a defendant sentenced to the penitentiary "never pays a penny" of a fine was followed by his statement that "If he is placed on probation, he may, over a period of time, pay part or all of that . . . fine." Counsel, as a part of a sound trial strategy, could well have decided to ignore the statement, in anticipation of making clear to the jury during his own argument that appellant would be required to comply with all the conditions of his probation or face the risk of revocation. Counsel did so during his argument, stating that, under probation, appellant would have a sentence in the penitentiary "looming over him, ready to drop with him violating any one of the provisions ordered by the Court."[1] Under the record before us, we cannot conclude trial counsel's

_____

[1] Counsel reiterated the point, telling the jury that appellant would "have to go to the penitentiary if he does not comply with every single term of probation . . . ."

5

alleged failure to object to the prosecutor's comments was not sound trial strategy. *Strickland*, 468 U.S. at 690; *Bone*, 77 S.W.3d at 833.

Appellant secondly points to trial counsel's failure to "object to the prosecutor's misstatement of the law when he promoted the proposition concerning the unavailability of any provision in the law in which an offender may be sentenced to a term of imprisonment, followed by a lengthy term of probation." He contends the prosecutor's statement that the "law doesn't allow that" was misleading because it ignored the trial court's authority to impose up to 180 days confinement in the county jail as a condition of community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 12 (stating "[i]f a judge having jurisdiction of a felony case requires as a condition of community supervision that the defendant submit to a period of confinement in a county jail, the period of confinement may not exceed 180 days"). Appellant argues that counsel's failure to object to the statement and request an instruction clarifying the possibility of jail time as a part of probation is the equivalent of the failure to object that required reversal in *Andrews*, 159 S.W.3d at 103. We disagree. Although the statement may have presented an inaccurate picture of the sentencing options open to the trial court if the jury recommended probation, in its context, which focused on the sentencing options given the jury under the court's charge, it was not so clearly a misstatement of the law as to require objection.

Appellant also complains trial counsel failed to object "to the note provided to the jury by the trial court which was a comment on the weight of the evidence." Shortly after the jury began its deliberations on punishment, it sent a note to the trial judge asking, "[i]f we sign form 1 using a time [less than] ten years, is it up to the judge to choose serving

6

time or probation?" The trial judge suggested to the prosecutor and defense counsel that he would send a note to inform the jury that he could not advise them further on the question. At the suggestion of the prosecutor, however, the court provided a response stating to the jury, "[p]robation may be granted only upon completing [Verdict] Form # 2." Defense counsel stated he had no objection to the prosecutor's suggestion.

For at least two reasons, we find trial counsel's agreement to the court's response to the jury's question did not constitute deficient performance. First, the court's response to the jury's question was correct, in that, of the two verdict forms provided the jury, Verdict Form No. 2 was the only one that provided a space for the jury to recommend a probated sentence. Second, given the goal of obtaining a probation recommendation, trial counsel reasonably could have determined that directing the jury's attention from Verdict Form No. 1, which provided no probation option, to Form No. 2 was favorable to appellant. *Andrews*, 159 S.W.3d at 101; *Bone*, 77 S.W.3d at 833.

Failure to Engage in Further Jury Argument

Next, appellant contends trial counsel provided ineffective assistance of counsel to appellant "when he failed to take advantage of the opportunity to engage in further jury argument on the issue of probation for Appellant after the trial court's receipt of a jury note which clearly indicated that the jury was leaning toward rejection of Appellant's application for probation and assessing a term of confinement in the penitentiary." During deliberations, the trial court received a note from the jury which asked, "If we choose a sentence of 15 years, what is the minimum time of incarceration[?]" On their examination

7

of the note, the trial court and both counsel realized that the mandatory instruction under section 4(a) of article 37.07 of the Code of Criminal Procedure had been omitted from the court's charge on punishment. The court decided to provide the instruction to the jury and offered the prosecutor and defense counsel a few additional minutes of jury argument to address the newly-added charge information. The prosecutor deferred to the court and defense counsel regarding the decision whether they should return the jury to the courtroom for further argument. Defense counsel stated that, after talking to appellant, he "will waive that argument."

Again, this decision falls within the realm of sound trial strategy and absent evidence of counsel's reasons for the challenged conduct, we will not conclude it constituted deficient performance. *Thompson*, 9 S.W.3d at 813-14. While appellant might have benefitted from his counsel's further argument, the State also would have had the opportunity for argument and appellant's counsel reasonably could have concluded the potential benefit was outweighed by the risks. *See Bone*, 77 S.W.3d at 834-35 (counsel reasonably could have decided risk of unfavorable counter-evidence outweighed benefit of additional mitigating evidence on punishment).

Improper Comments During Closing Argument

Appellant contends three statements made during defense counsel's closing argument during the punishment phase exhibited counsel's ineffective assistance. The first two statements were made in response to comments by the prosecutor during his punishment argument. First, appellant contends trial counsel was ineffective when he

8

"discounted the value of any show of remorse on Appellant's behalf at the punishment stage by posing the rhetorical question to the jury: 'What good is that going to do?'"

Appellant directs us to the following statement made by trial counsel:

One of the things that surprises me about [the prosecutor's] argument is the apology. There is no way I'm going to have [appellant] get up there on the stand and pretend to apologize about something like that. What good is that going to do?

If I had put– if I had put [appellant] on the stand and told him he should address [the victim], that can't come anywhere close to any– anything that would. I think, *even be appropriate. I just– I just can't imagine that that would have– would have made any difference in anyone's mind, regardless of how sincere he might be about something like that . . . .*

(emphasis added by appellant).

Next, appellant argues his counsel was ineffective by providing "his personal opinion during final summation to the jury on punishment that Appellant's lay witnesses, who had testified to Appellant's good character and suitability for probation, were not 'overly helpful, to be honest with you.'" Appellant focuses on the following statement by trial counsel:

. . . But I think from the people you saw, I think you probably got an accurate view of [appellant].

Do I wish he hadn't gone to the bar once since– since I got this case? Sure, I really wish that he hadn't. But, you know, that's a lifestyle choice he made, and it's a choice that he won't be able to make if he is on probation. It will not be an option. He won't be able to go to those places.

There– there is– there is just nothing else that I can do to get that information in front of you, other than calling friends and family and asking them what it was.

And take– *take them for what they're worth, but I don't– I don't think they were overly helpful to [appellant], to be honest with you* . . . .

(emphasis added by appellant).

During his argument, the prosecutor criticized appellant's failure to take the opportunity to apologize to his victim during his punishment testimony, and pointed out that the witnesses testifying on appellant's behalf on punishment were his friends and his sister. On appeal, appellant makes much of the two statements he singles out from his counsel's effort to rebut the prosecutor's remarks. He contends his counsel, by the statements, effectively agreed with the prosecutor and presented a State-oriented view of his punishment evidence. Considered in their contexts, neither of the statements carries the significance, nor the meaning, appellant's argument ascribes to them. We find the statements fall within the wide range of reasonable professional assistance. *Andrews*, 159 S.W.3d at 101; *Bone*, 77 S.W.3d at 833; *Thompson*, 9 S.W.3d at 814.

10

Finally, appellant contends trial counsel failed to provide effective assistance "when he told the jury during his final summation on punishment that Appellant would be subject to ten years of registering under the applicable law when, in fact, conviction of sexual assault committed Appellant to a lifetime of reporting and registering under the Sex Offender Registration Act." At counsel's request, the trial court included in the charge on punishment an instruction that his compliance with the Sex Offender's Registration Law would be among the conditions imposed if the jury recommended community supervision. During his punishment argument, counsel mistakenly told the jury that appellant would be required to register as a sex offender for ten years after he completed community supervision. Article 62.101 of the Code of Criminal Procedure provides, "the duty to register for a person ends *when the person dies* if the person has a reportable conviction or adjudication. . . ." (emphasis added). Appellant's conviction in this case is a "reportable conviction" and he, therefore, is subject to lifetime registration. TEX. CODE CRIM. PROC. ANN. §§ 62.001(5), 62.101.

The State concedes on appeal that counsel misstated the required registration period, and it attributes no reasonable trial strategy to counsel's misstatement. *See Andrews*, 159 S.W.3d at 102 (holding "[t]here can be no reasonable trial strategy in failing to correct a misstatement of law that is detrimental to the client"). However, the misstatement was not directly detrimental to appellant, because he was required to register for life whether or not the jury recommended probation. TEX. CODE CRIM. PROC. ANN. § 62.101.

Still, appellant contends the misstatement made a recommendation of probation less likely by minimizing the burdensome requirements of the sex offender statute. Because the jury was led to believe the requirements would end ten years after his completion of probation, appellant argues, the jury was unaware of "the onerous conditions of any probated sentence and instead, [the misstatement] rendered consideration of probation more difficult than it should have been had the jurors been properly apprised of applicable law."

We cannot agree that counsel's misstatement of the length of the sex offender registration period was an error so serious as to render his performance deficient under the first prong of the *Strickland* test. As appellant's argument notes, the statement was a part of counsel's emphasis of the "onerous conditions" that would accompany community supervision, and the sex offender registration was only one of several conditions he mentioned to the jury. The misstatement did not negate counsel's point.

We overrule appellant's issue and affirm the judgment of the trial court.


James T. Campbell
Justice

Do not publish.